In re 431 OAKDALE AVENUE BLDG.
CORPORATION.

No. 58896.

District Court, N. D. Illinois, E. D.

June 6, 1939.

Carl R. Chindblom, of Chicago, Ill., for petitioner.

Bobb, Spoerri, Bourland & Harris, of Chicago, Ill., for debtor corporation.

WOODWARD, District Judge.

On April 18, 1939, Carl R. Chindblom, Referee in Bankruptcy, but as Special Master in these proceedings, filed a petition alleging that he had not been paid the said $300 as compensation and $35

64

expenses, and requested that an order be entered directing the payment of same. On April 25, 1939, 431 Oakdale, Inc. (the corporation organized pursuant to the said Amended Plan of Reorganization in this cause), by its Treasurer, Edward L. Vollers, filed objections, setting forth that the said Special Master had not filed a claim in these proceedings prior to the entry of the Final Decree, that the said claim was discharged, and that this Court no longer had jurisdiction.

On May 10, 1935, the First Mortgage Committee filed its proposal of a Plan of Reorganization. The debtor filed its answer on May 15, 1935. On May 17, 1935 this Court entered an order referring said petition and answer to Carl R. Chindbloom, as Special Master. On October 21, 1935, the said Special Master filed his report, in which he denied the right to the Committee to file its plan and, also, made certain other recommendations in respect to the law and fact, as they were applicable to this case. In said report he requested that he be allowed the sum of $300 for services rendered and $35 for expenses incurred.

On December 30, 1935 this Court entered an order sustaining the exceptions of the said Committee to the Master's report. There were no exceptions filed to the Master's request for fees and expenses, nor was there an order entered in respect to same.

Thereafter, there were amended plans filed, and there were numerous hearings had before another Master, to whom the cause was referred. On July 13, 1936, the Court entered an order confirming the amended plan of reorganization, which was filed on April 14, 1936, and in said order of confirmation the Court made certain findings as to the classification of certain creditors, the amounts to be paid by the debtor for services or expenses incident to the reorganization, as well as all costs of administration, and all allowances for expenses and services rendered in this proceeding. There was the usual reservation of jurisdiction in said order, reserving unto the Court the right to make such further or additional or necessary orders in connection with and for the purpose of enabling the consummation of said amended plan, and provision for allowances of fees, costs, and expenses in these proceedings, and for all other purposes. On July 15, 1937, a final decree was entered in this cause, which discharged the debtor from all its debts, claims and liabilities, except such claims as by the Acts of Congress relating to Bankruptcy, 11 U.S.C.A. § 1 et seq., is expressly excluded.

It is apparent that the Special Master's report, for which he is now asking to be compensated, is divided into two parts—first, his findings and recommendations in connection with the reference made to him by the Court; second, the request for fees and expenses. It was the duty of the Debtor Corporation and its successor, when it made the various reports of progress of this case, and more especially when it presented the final decree to this Court, to have first disposed of this claim. Failure to do so, whether through inadvertence or mistake, amounts to an actual misrepresentation.

In the ordinary bankruptcy case, it is the duty of the Referee in Bankruptcy to check the records of the Court, both in the office of the Clerk of the Court and the office of the Referee in Bankruptcy, prior to the closing of a bankruptcy matter. It is the usual and customary practice for the Referees in Bankruptcy to advise various counsel of record to finally dispose of undisposed matters. In corporate reorganization, however, it is impossible to follow this practice. The Courts do not refer the entire cause but, generally, some specific matter. The very nature of the proceedings are such that the Court depends upon those charged with the responsibility of promulgating the Plan of Reorganization to see to it that before the entry of a final decree all matters are disposed of. The Special Master in this case, in filing his report, filed his claim, specifically setting out the amount requested. He was not required to do anything further. It cannot be said that because his report was overruled he is not entitled to payment for services rendered in connection with said report. The question of his fees and expenses is merely a matter of reasonableness, and as far as this record discloses the reasonableness was never questioned—in fact, these fees were entirely overlooked—and when the final decree was presented to this Court, and the recitation specifically made that all matters of every kind and character had been fully disposed of such representation was at least untrue insofar as this particular matter was concerned. More-

over, the record discloses that the order of this Court providing for the filing of fee requests and for a hearing upon other allowances was never sent to Referee Chindbloom; the Referee, as a Special Master, relied upon counsel, and he had a right to do so.

 It would be indeed ridiculous to expect that this Special Master, having been directed by the Court to render services, shall now be compelled to institute a plenary action against the newly organized corporation, which pursuant to decree assumed all of the obligations of the old corporation, in order to enforce collection. It is true that, after the entry of a final decree, the bankruptcy court has no jurisdiction to enter an order allowing a claim filed subsequent to the final decree. However, in this case, the Special Master filed his claim long before the entry of the final decree. The Court has power to correct its order and decrees at any time, in order to give full force and effect to its decisions, and the law is universal that the Court has the right to correct inadvertent judgment entries or irregularities, as well as to correct mistakes or fraud which have been committed upon the Court.

Remington on Bankruptcy, Section 2652, notes the following: "The Referee is entitled to reimbursement of his expenses and may require indemnity therefor. He is entitled to require indemnity for his expenses by the Supreme Court's General Order No. X. Were he not entitled to indemnity, it would yet doubtless be the law, from the necessities of the case, that his expenses would come first, even though not mentioned first in the statutory order of priority; for his expenses are the expenses of the maintenance of the court itself, and the expenses of the government in thus protecting the rights of parties in a particular fund or property is to be considered a first lien upon the fund or property, ahead of all liens thereon created by the parties themselves, as well as ahead of the lien of the government thereon for taxes for general purposes."

Accordingly, the fees and expenses of the Special Master are the costs of the maintenance of the Court itself, which must be paid.

The Court has the power to correct its orders and decrees at any time, in order to give full force and effect to its decisions, and in order to dispose of unfinished business. See annotations in 48 A.L.R. 355.

 Where a single cause of action is omitted in a case through ignorance, mistake or fraud the application of the doctrine of res judicata will not apply to a second cause brought upon the said omitted cause of action. See annotations in 2 A.L.R. 534. If the Court should hold that Master Chindblom is entitled to fees, but cannot obtain same in these proceedings, then the said Master would be relegated to instituting litigation in another suit for the collection and enforcement of his claim. However, since the Court has jurisdiction to correct the records and complete same in the case at bar, such a burden should not be placed on the Special Master.

 The jurisdiction of a Court over the subject matter and the parties once fully attached in a cause continues until all issues, both of fact and of law, have been finally determined. There are no terms in bankruptcy and, accordingly, the Court may at any time correct its records and supply whatever is necessary to circumvent omissions by inadvertence and misrepresentation.

There should, therefore, be an order entered, providing as follows:

(1) Allowing the said sum of $335 for fees and expenses to Carl R. Chindblom, Special Master, said order to be nunc pro tunc as of July 15, 1937, the time of the entry of the final decree in this case.

(2) That the final decree entered July 15, 1937, should be amended and supplemented by the entry of this order, and that this order shall, for all intents and purposes, be a part of the said final decree, and to be incorporated by reference into said final decree, and that the objections to the allowance of the claim of Carl R. Chindblom filed by the 431 Oakdale, Inc., be overruled, and that the said 431 Oakdale, Inc., be directed, within some reasonable time, to pay said sum.

 The objections to the allowance of Referee Chindblom's claim is entirely dependent on the conclusiveness of the final decree. The final decree in itself makes the direct representation to the Court that it is entered "upon due notice of presentation thereof * * * to all parties in interest." This, certainly, was a clear

misrepresentation. The record reveals that Mr. Chindblom was not given notice.

As has been demonstrated hereinabove, the mere labeling of a document "Final Decree" does not, necessarily, mean that the Court cannot thereafter enter orders adjudicating questions which have remained undisposed, through inadvertence, mistake or misrepresentation.

An order will be entered in conformity with the above and foregoing.