## In re TOM MOORE DISTILLERY CO.

No. 12832.

District Court, W. D. Kentucky, Louisville Division.

Dec. 20, 1943.

See, also, 32 F.Supp. 382.

Max Field and Field, Lovejoy and Buchholz, all of Detroit, Mich., for petitioner.

Oldham Clarke and Allen, McElwain, Dinning & Clarke, all of Louisville, Ky., for Tom Moore Distillery Co.

MILLER, District Judge.

On June 11, 1938, reorganization proceedings under Chapter 77B of the Bank-

ruptcy Act, 11 U.S.C.A. § 207, were filed in the District Court by the Tom Moore Distillery Company. After numerous hearings and a number of unsuccessful attempts, a plan was finally submitted in November 1939 by a stockholders' committee which was eventually approved by the Court and confirmed by order entered on January 26, 1940. The plan provided in general for the investment of $25,000 of new capital by a stranger to the existing corporation, for the payment of creditors in cash, and for the issuance of new stock, part of which was to be exchanged at the rate of one share of new stock for each two shares of old stock surrendered in accordance with the provisions of Paragraph 11 of the plan, and the remainder of which was issued to the party supplying the necessary new capital. Paragraph 11 of the plan provided as follows: "11. All outstanding stock of the Company and all certificates therefor shall be void as of the date of confirmation of the plan, except insofar as said certificates may entitle the holders thereof to exchange the same for certificates for new stock under the plan. All certificates for outstanding shares of stock shall be forwarded to the depository within three months after the confirmation of the plan. All certificates not forwarded to the depository within said period, or within such further period as the court may, from time to time, allow, shall be void for any and all purposes whatsoever. After confirmation of the plan, the Company shall cause to be engraved certificates of a different size, design and/or color to evidence the new shares of stock, to be issued under the plan; and certificates for 333,802 shares of new stock shall be made available for issuance under the plan." Some of the old stockholders exchanged their stock for the new stock; others did not. The reorganization proved successful, the Company became rehabilitated, and on June 9, 1942, the Court entered a final decree closing the estate, which read as follows:

### Final Decree Closing Estate

"It appearing to the Court from the record herein that the plan of reorganization has been consummated, that the Trustee has been discharged of his trust, that the period allowed for the exchange of certificates representing old stock for certificates representing new stock has expired, and the Court being sufficiently ad-vised, it is ordered that the debtor, Tom Moore Distillery Co., be and it is hereby discharged from all of its debts and liabilities except as provided in the plan for corporate reorganization, that all rights and interests of the holders of certificates representing old stock of the Company are hereby terminated and that this matter be and the same is hereby closed and the proceedings dismissed."

On January 25, 1943, Bernard J. Radigan instituted the present proceedings to reopen the estate and to permit certain old stockholders, including himself and others similarly situated, to exchange for new stock of the Company old stock which they held at the time when the proceedings were first instituted and which had never been turned in for exchange in accordance with the provisions of the plan. The petition alleges that approximately 35,000 shares of the old stock were still outstanding and had not been exchanged. The relief prayed for is objected to by the reorganized corporation.

The petitioner relies principally upon Section 204 of Chapter 10 of the Chandler Act, Section 604, Title 11 U.S.C.A. which provides that: "Upon distribution * * * the judge may, upon notice to all persons affected, fix a time, to expire not sooner than five years after the final decree closing the estate, within which, as provided in the plan or final decree—(1) * * * (2) the holders of securities shall present or surrender their securities. After such time no such claim or stock shall participate in the distribution under the plan." It is contended that since the exchange period provided by the plan was less than the 5 years provided by the statute the rights of the old stockholders to exchange their old stock for new is not barred until the five year period has expired, irrespective of the lesser period provided by the plan. It would seem that this contention would be sound if the case was still open upon the Court's docket and no final decree closing the estate had been entered. Under those conditions no doubt the plan could be modified so as to comply with the statutory provisions. In re 4145 Broadway Hotel Co., 7 Cir., 131 F.2d 120. However, Section 204 of the Chandler Act must also be considered in conjunction with Section 228 of the same Act, Section 628, Title 11 U.S.C.A., which provides in substance that upon the con-

940

summation of the plan the District Judge shall enter a final decree "discharging the debtor from all its debts and liabilities and terminating all rights and interests of stockholders of the debtor, except as provided in the plan or in the order confirming the plan or in the order directing or authorizing the transfer or retention of property" and "closing the estate." As pointed out above, such final order was entered on June 9, 1942, and no objection taken thereto until the present proceedings were instituted on January 25, 1943. It has been several times held that the effect of such a final decree is to deprive the District Court of any further jurisdiction in the matter except such as may be reserved in the order itself. In the absence of such reservation it deprives the Court of any jurisdiction to change or modify the terms of the plan previously approved and consummated. Re Argyle-Lake Shore Corp., 7 Cir., 98 F.2d 372; Re Corona Radio & Television Corp., 7 Cir., 102 F.2d 959; Re Wedgewood Hotel Co., 7 Cir., 125 F.2d 327; Re Utilities Power & Light Corp., 7 Cir., 125 F.2d 343; Re Flatbush Ave-Nevins St. Corp., 2 Cir., 133 F.2d 760; Re Sherland Building Corp., D.C.N.D. Ind., 29 F.Supp. 985; Re Lyman Richey Sand & Gravel Co., D.C.Neb., 42 F.Supp. 158.

█ If the plan itself contained some provision not authorized by the statute, such error should have been called to the attention of the Court at the time of its proposed confirmation and corrected. The petitioner herein, B. J. Radigan, was a member of one of the two stockholders committees which after separate efforts finally joined in submitting the plan which was approved, and which he now attacks. His present counsel was one of counsel for the other stockholders committee with which Radigan's committee united in proposing the plan now complained of. The order of confirmation made "the plan and its provisions" binding upon both the debtor corporation and all stockholders whether or not such stockholders accepted it or filed proofs of their claims or interests. Sect. 224, of Chapter X, Chandler Act, Sect. 624, Title 11 U.S.C.A. No objection to the confirmation was made by either the Secretary of the Treasury or by the Securities and Exchange Commission, whose counsel took a very active part in the proceedings. No stockholder filed any objection to, nor took any appeal from, the Court's order of January 26th, 1940 finally approving the plan so submitted and urged upon it. Sections 47 and 48, Title 11 U.S.C.A.; Dee v. United Exchange Building, 9 Cir., 88 F.2d 372. Petitioner's rights are accordingly controlled by the provisions of the plan, which are a bar to the relief sought in this proceeding.

█ The petitioner contends that irrespective of the closing of an estate in bankruptcy it is always within the discretion of the Bankruptcy Court to reopen an estate in order to give equitable relief to claimants who show that they are properly entitled thereto. Even if it be conceded that such a power exists in the court at the present time such action must be considered in the light of conflicting equities. At the time of the confirmation of the plan many stockholders attached little or no value to their old stock and apparently thought that the trouble involved in making the exchange provided for was not worth the effort, or were so little interested in the matter as to not keep themselves advised of the proceedings and the status of the reorganized company. For all practical purposes they in effect abandoned their claims as stockholders, and the destiny of the company was left to those who had faith and were willing to invest new money and expend much effort in the rehabilitation of the company. It was only until approximately three years later, after time and effort had given some value to the new shares, that they come into court asking that they be permitted at this late date to share in what they previously had abandoned as hopeless. During this period the new stock has been traded in upon two Exchanges; much of it has passed into the hands of new investors, whose rights are certainly entitled to as much, if not more, consideration as are the rights of those who now make the present delayed plea. The market value of the new stock so traded in has necessarily been influenced, to a large extent, by the financial condition of the company as reflected by its periodical financial reports and by the number of outstanding shares of stock, which has been given by the reports as being limited to the shares of new stock issued prior to the expiration of conversion privilege. To presently authorize the issuance of 17,500 shares of additional stock for no new consideration to the company would cause an immediate corresponding loss in the market value of

the new shares now outstanding in the hands of the investing public. Even if the discretion to reopen the estate should exist with the Court at the present time it would appear inequitable to do so.

The petition to reopen the estate and to authorize the further conversion of old stock for new is accordingly dismissed.