In re UNIVERSAL LUBRICATING SYSTEMS, Inc.

Appeal of STOCKHOLDERS PROTECTIVE COMMITTEE.

Appeal of RUBENSTEIN.

Nos. 8902, 8927.

Circuit Court of Appeals, Third Circuit.

Argued May 15, 1945.

Decided June 27, 1945.

Writ of Certiorari Denied Oct. 8, 1945.

See 66 S.Ct. 58.

W. C. McClure, of Pittsburgh, Pa., on the brief, for appellants.

S. Wallace Dempsey, of Washington, D. C., for appellant Protective Committee.

Clyde P. Bailey, of Pittsburgh, Pa. (Bailey & Critchfield, of Pittsburgh, Pa., on the brief), for appellant Rubenstein.

A. E. Kountz, of Pittsburgh, Pa. (William A. Meyer, Clarence A. Fry, and Kountz, Fry, Staley & Meyer, all of Pittsburgh, Pa., on the brief), for Austin L. Staley, trustee in reorganization for Universal Lubricating Systems, Inc., appellee.

Before DOBIE, GOODRICH, and McLAUGHLIN, Circuit Judges.

GOODRICH, Circuit Judge.

These two appeals, one by a stockholders' committee, the other by a creditor, involve the affairs of the same debtor and were heard together. The debtor is the Universal Lubricating Systems, Inc. which went into bankruptcy in 1941. The bankruptcy proceeding was translated into a reorganization under Chapter 10 of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., upon the debtor's petition. A plan having been submitted which, as amended, has met the approval of the District Court as a "fair and

equitable, and feasible" one under 11 U.S.C.A. § 574 is now before us for a review of the conclusions concerning its merits.[1]

The chief attack upon the plan is made by a stockholders' protective committee. Its objections in this Court are, in the main, the same as those made against the plan before the District Court. They relate chiefly to the question of valuation of the debtor corporation. If the stockholders' arguments are sound, the corporate enterprise is worth a great deal more than the values which have been assumed as the basis for the plan of reorganization; if the debtor is as well off as the stockholders' committee contends it is, it could well be that the plan should be amended to take this happier situation into account.

We turn then to the attacks upon the foundation of the plan made by the appellants. In the first place, they quarrel with the conclusion as to the value of the physical assets. There were two valuations of the physical property given in evidence. One set the figure at approximately $279,000; the other at $375,000. The master found, and the court approved, a value of $300,000. The conclusion is objected to on the theory that in such case the master should have adopted, as his valuation, a figure half way between the two appraisals. We know of no rule of law which requires any such method of reaching a conclusion and we certainly are not going to make one. Splitting a difference between parties is no doubt an effective way of striking a bargain. But it certainly is no rule which binds a master who is supposed to use his own brains in reaching a conclusion as to value.

The point most stressed by the appellants throughout their brief and oral argument has to do with a valuation for a claim against Stewart-Warner Company. The debtor makes lubricating apparatus and is a competitor of Stewart-Warner. It is stated that the debtor prevailed in certain patent litigation against that company. In October 1937 Stewart-Warner sued the debtor for the alleged infringement of certain patents. Debtor in November 1937 counter-claimed for damages for unfair competition and the counter-claim as amended in April 1941 has been held to state a cause of action. Stewart-Warner Corporation v. Staley, D.C., 1941, 42 F. Supp. 140. It is the failure to give a valuation to this claim against Stewart-Warner, as part of present value of the debtor, which is the shareholders' chief ground for complaint. The claim has not been ignored in the proposed rearrangements; the plan provides that the net proceeds of whatever is recovered in this lawsuit shall be used for the retirement of the new preferred stock, with any balance remaining to be distributed among the present preferred and common shares as a liquidating dividend.

The appellants say this claim should be valued for at least $750,000. They point to testimony from the attorney-at-law retained in the lawsuit against Stewart-Warner, that he estimated the damages suffered by the debtor from unfair competition at $2,000,000, that he expected to prove liability "up to the hilt". Then it is pointed out that equity will not suffer a wrong to be without a remedy, and, therefore, the presumption is that the full amount of loss will be recovered. Since,

[1] The main features of the plan are succinctly stated by the District Judge as follows:

"(1) That creditors of debtor shall be given one share of preferred stock, and one share of common stock in the reorganized corporation for each $100 of claims duly proven by them; (2) the present common stockholders shall be given one share of new common stock, upon paying $10 for each unit of ten shares of the old common stock; (3) the present preferred stockholders shall receive one share of common stock upon paying $10 for each share of old preferred stock; (4) that each share of preferred stock in the new corporation is to have ten votes, while each share of the new common stock shall have one vote; (5) that the Stewart-Warner litigation shall not be passed to the reorganized corporation, but shall be retained and litigated by the Trustee, and that the net proceeds of the litigation shall be earmarked for retirement of the new preferred stock." 59 F. Supp. 171, 172.

The last feature of the proposed plan was modified by the District Judge providing that the net proceeds should be disposed of as follows:

1. Retirement of the issued preferred shares of the capital stock of the reorganized company.

2. If the proceeds are insufficient for that purpose it should be distributed equally between the preferred shares.

3. Any balance remaining is to be distributed among the present preferred and common shares of the debtor as a liquidating dividend.

under the statute, damages are to be trebled, the $6,000,000 thus to be recovered will quite change the financial picture of the debtor.

We fear that the stockholders' committee has allowed itself to become overoptimistic in this argument. We have not, of course, the faintest notion of the strength of the debtor's case nor the defendant's defense in the forthcoming litigation. The suit has not yet been tried and is still in the preliminary stage. Lawsuits, even those in which a plaintiff endeavors to prove liability up to the hilt, are uncertain things both as to the time which they take and what the end product to the litigant will be. We think there was no error in not including this claim in the evaluation of the debtor's property and that the provision made for the distribution of eventual net proceeds is both fair and feasible. We have examined the decisions cited to us. The Committee for Holders, etc. v. Kent, 4 Cir., 1944, 143 F.2d 684. We do not find that the facts of that case give us any help in this one.

■■■ Complaint is also made on behalf of the shareholders that no value was given to a claim for damages against Christian Brynoldt for slander of title. Brynoldt, a creditor, it seems, had filed a reclamation petition in which he alleged that under an agreement made by him with the debtor, Brynoldt was to become the owner of the debtor's machinery and materials of manufactured stock if his loans to the debtor exceeded $20,000. The loans did exceed $20,000 and Brynoldt was given, in 1937, a bill of sale by debtor. The shareholders argue that Brynoldt is not entitled to what is claimed in the reclamation petition. The trustee seems to agree with this point. But that is not the point involved in this appeal. Shareholders claim that Brynoldt, by making the claim, has disparaged the debtor's title and is therefore subject to liability, including exemplary damages. See Restatement, Torts § 624. But as clear as the existence of this right, is the absolute privilege for one engaged in litigation to assert his own claim for property even if that assertion disparages the claim of another. See Restatement, Torts § 638. See, also, § 647. There was no error in not placing a valuation upon this claim in the reorganization plan.

■■■ It is also made the subject of complaint that the valuation was not fixed by capitalization of earnings of the debtor. The debtor corporation has been in business since 1932 and up to 1941 lost money in every year but one. During management by the trustee there was a profit in 1941, a loss in 1942 and large profits in 1943 and the first five months of 1944.

As to the years prior to the trusteeship, the special master stated that the losses may have been due to litigation with Stewart-Warner, though he did not so find as a fact. During the war years a portion of the business has been the manufacturing of goods for the national war effort for both Army and Navy. For instance, in 1943 the trustee did about $225,-000 worth of industrial business and $497,-000 Government business. Due to a back log of losses which could be carried over, there was no Federal income tax payable in 1943. We heard a great deal of argument about good prospects for the business. The Court was told that with the installation of more modern machinery the productive capacity of a given machine would be increased; that as new machinery was added further increased production would be continuously possible. All of this may well be true and we hope, for the sake of those engaged in the enterprise, that it proves to be true. It bears upon the question of the feasibility of any plan which contemplates the continuance of the debtor as a going business concern. But such prospects do not furnish an argument for capitalization of earnings to show present worth when the earnings have come under the highly artificial stimulus of war production and an unusually favorable tax situation.

■■■ These same arguments, somewhat differently applied, are also used as a basis for urging the postponement of reorganization. We think the contention that it should be put off until the unfair competition litigation works its way through the courts has already been disposed of by what we have said on the subject above. The stockholders argue however that on the basis of the continuance of present satisfactory earnings the company can get itself out of debt and preserve the enterprise for them. This point was considered thoroughly by the special master who pointed out that the favorable situation as to taxes through a back log of losses is

over and that "Only to the extent that the profits after taxes exceed the interest will the condition of the debtor be improved by delay."[2] He finds that the prospect of successful operation of the business would be adversely affected by prolongation of the trusteeship, and that the possible benefit to shareholders by delay does not justify the prolonged and increased risk to creditors. We think the master's conclusion is sound.

We reach the conclusion, then, that the stockholders' objections are not well taken and that they have no valid ground for complaint that the plan is not fair and equitable.

The appeal by one of the creditors came following the appeal by the stockholders and we were frankly told by creditor's counsel that if the stockholders had not delayed he would have acquiesced in the plan. Complaint is made only of that portion of the plan which concerns the disposition of the proceeds to be recovered in the Stewart-Warner litigation.

■ The right of the creditor to full priority in these cases is undisputed. Case v. Los Angeles Products Co., 1939, 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110; Consolidated Rock Co. v. DuBois, 1941, 312 U.S. 510, 61 S.Ct. 675, 85 L.Ed. 982. The Los Angeles Products decision was in the mind of the special master and he rejected the plan originally filed with him because he thought it violated the rule of that decision.

■ The objection of the creditor has to be built up in quite a number of contingencies. In the first place, one must assume that there is recovery against the Stewart-Warner Company and that the judgment has been collected. Then it must be assumed that the net proceeds so collected are more than sufficient to retire the new preferred stock which the creditors will own under the reorganization plan. Then it must be assumed that while this litigation has been going on the earnings of the company have been insufficient to pay the stipulated rate of dividend on the preferred stock and that creditors on that account have lost interest to which they are entitled, since the stock is not cumulative. If the lawsuit results in more than enough to retire this preferred stock and if, in the meantime, one of the creditors who holds the stock has not received his dividend thereon and if the net proceeds of the lawsuit leave a residue after retiring the new preferred stock, then the present shareholders may get something. And they will get something while a creditor may, possibly, not have had all his interest in the form of preferred stock dividends.

By far the most determinative of these hypothetical situations is the possibility that the Stewart-Warner litigation will provide a large financial return. But the very uncertainty of occurrence which militates against the stockholders' treating the claim as an asset-on-hand equally militates against the creditors being permitted to treat it as an asset-on-hand. Further, the possible loss of interest on the creditors' new preferred shares is at least counterbalanced by the possible gain of dividend on the creditors' new common shares; the former is conditioned on several contingencies while the latter is conditioned on but one.

If there were a fund immediately to be divided and part of it was given to shareholders before creditors were paid, the latter could complain under the authority of the cases cited above. But in this case the danger is so contingent and so far away that we think it is not to be made the basis of attack on a plan which has been worked through many hearings before a special master and finally approved by the District Court.

The plan is, therefore, approved as fair and equitable and feasible. The judgment of the District Court is affirmed.

---

[2] The stockholders tell us that taxes are presently to be lightened and that will make a difference. We may share the hope without concluding that it affords a substantial basis for deferring the completion of the reorganization.