### In re UNIVERSAL LUBRICATING SYSTEMS, Inc.

No. 21104.

District Court, W. D. Pennsylvania.

May 5, 1947.

John A. Robb (of Rahauser, Van Der Voort, Royston & Robb), of Pittsburgh, Pa., for Universal Stockholders' Protective Committee.

Clarence A. Fry and A. E. Kountz (of Kountz, Fry, Staley & Meyer), both of Pittsburgh, Pa., for Austin L. Staley, Trustee.

WALLACE S. GOURLEY, District Judge.

This matter comes before the Court on petition of the Universal Stockholders' Protective Committee for a rule to show cause why the Order of this Court made on March 7, 1945, by the Honorable Judge Schoonmaker, now deceased, in the matter of the reorganization of Universal Lubricating Systems, Inc., should not be amended and a Master appointed for the purpose of determining the present value of the holdings of the preferred stockholders of Universal Lubricating Systems, Inc., as it is now constituted, who are the same persons in most instances as the former creditors of Universal Lubricating Systems, Inc., prior to bankruptcy and reorganization of said company.  59 F.Supp. 171

The petition for rule to show cause was presented to the Court on March 4, 1947. The Court directed the same to be filed, and two members of the Court have heard the oral arguments and considered the briefs filed by counsel for the respective parties to this proceeding. This was done for the reason that Judge Gibson, after the death of Judge Schoonmaker, confirmed the final plan of reorganization of said company, and entered the Order for the consummation of the reorganized plan. Judge Gourley heard and was informed in detail as to all the facts and circumstances having to do with the proceeding in which Universal Lubricating Systems, Inc., was a counter-claimant in a proceeding against the Stewart-Warner Corporation, in which violations of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1-7, 15 note, and unfair competition were claimed. After the Court was engaged in the trial of said proceeding for approximately five months, a settlement was effected in the amount of $225,000, which was approved by the trial judge.

To make possible this information and knowledge being merged and thoroughly considered in disposing of said petition, two members of this Court agreed to hear and decide the request for the equitable relief desired by the Protective Stockholders' Committee.

In order for the problem to be intelligently approached and thoroughly understood, it is necessary that brief comment be made as to the circumstances existing from the time of the filing of the bankruptcy proceedings to the present date. A summarization will, therefore, be briefly made.

On May 12, 1941 bankruptcy proceedings were instituted for the purpose of protecting creditors of the Universal Lubricating Systems, Inc., and on August 5, 1941, the proceedings were transferred to one of reorganization, in accordance with the provisions of Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. Austin L. Staley, petitioner therein, was Trustee in the bankruptcy proceedings and was substituted, therefore, as Trustee for the Debtor in the reorganization proceedings.

The case was referred to a Master, who, among other things, found that there was insolvency under the Bankruptcy Act and a reorganization plan was submitted to him. The first plan was rejected by the Master for the reason that it included the participation to some extent of the stockholders of the Debtor Company.

On September 18, 1944, the Trustee filed an amended plan, the main provisions of which were as follows:

· "(1) That creditors of debtor shall be given one share of preferred stock, and one share of common stock in the reorganized corporation for each $100 of claims duly proven by them; (2) the present common stockholders shall be given one share of new common stock, upon paying $10 for each unit of ten shares of the old common stock; (3) the present preferred stockholders shall receive one share of common stock upon paying $10 for each share of old preferred stock; (4) that each share of preferred stock in the new corporation is to have ten votes, while each share of the new common stock shall have one vote; (5) that the Stewart-Warner litigation shall not be passed to the reorganized corporation, but shall be retained and litigated by the Trustee, and that the net proceeds of the litigation shall be ear-marked for retirement of the new preferred stock."

The Special Master held hearings on this plan. On October 13, 1944, he filed a supplemental report, holding that this amended plan complies with the Act; that it is fair, equitable and feasible.

This plan was approved by the Master and in turn approved by His Honor, the late Judge Schoonmaker. The Protective Stockholders' Committee, representing the stockholders of the Debtor Company, took exception to this plan, and contended first, that there was no need for the reorganization plan for the reason that the Debtor Company did not commit an act of bankruptcy, that the Debtor Company was solvent at the time that the bankruptcy proceedings were instituted, and they took particular exception to the Master's findings on the question of valuation of the assets and business. They contended that the Referee erred,

1. In establishing the proper value,

2. In not setting the value upon the litigation which was pending in the case of

Stewart-Warner Corporation v. Staley, Trustee, D.C., 4 F.R.D. 333.

3. That one Brynoldt had made various remarks thereby committing slander of title, and this would be considered an asset, and

4. That the Trustee was operating and earning a substantial profit and that this should be evaluated as an asset.

Thereafter, said plan was confirmed with modification:

"We are of the opinion that in his two reports the Special Master has fully and fairly dealt with all these matters, except that in his treatment of the Stewart-Warner litigation, paragraph IX (c) should be stricken out, and the following substituted therefor:

"(c) After deducting from the recovery of said litigation, all counsel fees, costs, expenses or other items incidental to the litigation, and also any taxes or other charges of similar or dissimilar nature, which equitably should be deducted therefrom, and remaining proceeds shall be earmarked and paid by the Trustee in the following manner:

"1. First, he shall pay to the reorganized company the amount needed for the following purpose * * * for the retirement of the issued preferred shares to its capital stock, said amount to be earmarked and available only for that purpose.

"2. If said remaining proceeds, so earmarked, shall be insufficient for a retirement of all of said preferred shares, they shall be distributed equally among said preferred shares, in the nature of a liquidating dividend.

"3. The balance, then remaining in the hands of the Trustee, after such earmarking and distribution—if there be such balance—shall be distributed and paid by the Trustee, under the direction of the Court, among the present preferred and common shares of debtor, as a liquidating dividend and in accordance with debtor's provisions as to the priority rights of its preferred shares on liquidation."

An appeal was perfected in the Circuit Court of Appeals and the questions raised in the appeal were identical with the exceptions taken before the District Court hereinbefore mentioned. The Circuit Court affirmed the decision of the District Court, and certiorari to the Supreme Court of the United States was denied. In re Universal Lubricating Systems, Inc., D.C., 59 F.Supp. 171; Id., 3 Cir., 150 F.2d 832; Stockholders' Committee of Universal Lubricating Systems v. Staley, 326 U.S. 744, 66 S.Ct. 58.

The requisite acceptances having been obtained from creditors, the plan was then confirmed by Judge Gibson's Order entered November 23, 1945, and recorded in the Office of the Recorder of Deeds of Allegheny County November 28, 1945, in Deed Book Volume 2865, page 360. There was no appeal from that Order of Confirmation. The Order of Consummation of the Plan was entered by Judge Gibson May 3, 1946.

The amount of indebtedness was approximately $331,000 owed to various creditors by the Debtor Company, and the then value of the assets as found by the Master was substantially less than the amount of indebtedness. The best estimates seem to indicate that if the Debtor Company were liquidated on May 12, 1941, or shortly thereafter, the creditors would have realized approximately fifteen cents (15%) on the dollar, and, no doubt, for this reason, they agreed to accept preferred stock of the proposed reorganized company for the reason that preferences were extended to them as to any future liquidation, and in no event could they have been worse off by accepting this proposed compromise. And then, with every share of preferred stock, they were given one share of common stock; as near as we are able to ascertain, the preferred and common stock is held almost exclusively by the former creditors of the Debtor Company.

However, the former common stockholders of said company were given the right to purchase one share of common stock in the new company upon paying $10 for each unit of ten (10) share of the old common stock; and the old preferred stockholders were given the right to purchase one (1) share of common stock in the new company upon paying $10 for each share of the preferred stock in the old company. No satisfactory reason has been given as to why more of the old common or preferred stock-

holders did not elect to purchase stock in the new company. It could have been lack of funds, interest, trust, or belief that the new company could be succcessfully maintained or operated, and the old stockholders, therefore, did not desire to invest any additional funds in the new company. However, regardless of the reason for the election to not purchase stock in the new company, such is an actuality and a fact, and is of material importance in considering the petition which has been filed by the Stockholders' Protective Committee and in passing upon the question as to whether or not the relief requested should be granted.

Although the company between the period from 1932 and up to 1941 was operating at a loss every year with the exception of one, after the appointment of the Trustee and during his management there was a profit in 1941, a loss occurred in 1942, and large profits in 1943 and 1944. This material change was, no doubt, due to the war years since a portion of the business of said company was the manufacture of goods for the war effort.

Since the consummation, the corporation has functioned with a Board of Directors made up of Mr. Staley and the representatives of the creditor interests, that being the Board of Directors named in the Plan of Reorganization.

The necessary money which was needed for the conduct of the business by the Trustee, and then after confirmation for the conduct of the business by the Board of Directors, of the Reorganized Company, was furnished to a large extent by borrowing from the Peoples-Pittsburgh Trust Company, now Peoples First National Bank & Trust Company, of Pittsburgh, Pennsylvania, that credit was obtained on the strength of the Trustee's reputation for success, and on the strength of the standing of the creditor members in the management, and notwithstanding the bankruptcy and unsuccessful history of the stockholder management. The cash balance of the Trustee November 23, 1945, which was the date of the confirmation of the plan, was:

| Account | Amount |
| --- | --- |
| Withholding Tax Acct. | 3,790.15 |
| Regular acct. | 63,707.85 |
| Payroll acct. | 500.00 |
| Petty Cash | 57.17 |
| Potter Title & Trust Co. | 5,000.00 |
| | $73,055.17 |

The Reorganized Company owes a balance of $35,800 on account of its loans at the Peoples First National Bank & Trust Company.

The original capital structure of the Debtor was as follows (Paragraph II of the Amended Plan of Reorganization):

"II.

"The capital structure of Debtor.

"Debtor has issued and outstanding one issue of preferred capital stock of a total par value of $215,000.00, made up of 2,150 shares of the par value of $100.00 each, and 35,000 shares of common capital stock of a par value of $1.00 per share."

Subsequently, and because Debtor had over-issued its shares, the Court, by Order of the 7th day of January, 1946, permitted additional shares of the approximate total number of 5,800 to be recognized as common shareholders.

The Plan provides as follows (after making provision for certain priority claims):

"(e) As to other valid claims, unsecured and general, each of them shall receive, in full, shares of preferred capital stock of the reorganized company at the rate of one share of preferred capital stock for each $100.00 of claim, plus one share of the common capital stock of the reorganized company for each $100.00 of claim. For example, a claim of $1,000.00 shall receive, in full, ten shares of the preferred capital stock of the reorganized company, plus ten shares of the common capital stock of the reorganized company.

"(f) Holders of the present preferred capital stock of the debtor, upon written request to the Trustee, shall receive negotiable warrants, permitting holder to purchase the common capital stock of the reorganized company at the rate of one share of the common capital stock of the reorganized company for each share of the present preferred stock of the debtor, and upon the payment of $10.00 in cash for each share of common capital stock of the reorganized company. Holders of the pres-

ent common stock of the debtor shall receive, upon written request to the Trustee, warrants permitting them to purchase shares of the common capital stock of the reorganized company at the rate of one share of common capital stock of the reorganized company for ten shares of the common capital stock of the debtor, and upon payment of $10.00 per share in cash for each such share of the common capital stock of the reorganized company. The warrants shall contain a time limitation clause with reference to the exercising the said rights of purchase, but which limitation shall not be less than three months after confirmation of the Plan by the District Court (or by the Circuit Court of Appeal in the event of an appeal from the District Court Order of Confirmation) and shall contain such other provisions not inconsistent with what is above set forth, as the Trustee may regard to be expedient."

As part of the consummation, the Trustee directed, and the Reorganized Company proceeded to issue, new preferred and common shares to creditors, as follows: A total number of 3,754 shares of preferred, and a total number of 3,754 shares of common, this being on the basis of an indebtedness (after deduction of the priority and secured items) in the total amount of $375,400, which included interest calculated to the 1st day of June, 1946, the calculation to that date being in accordance with the instructions given to the Trustee by Paragraph No. 7 of the Order of Court of May 3, 1946. There are two or three disputed claims of creditors which have not as yet been compromised or adjudicated, and which may increase to some degree the total issue in the future.

Certain other creditors paid additional money for shares, pursuant to the fractional provision in the Plan—Paragraph x(g).

A list of the shares purchased by old stockholders or by fractional share creditor interests is set forth in Footnote 1.[1]

[1] Preferred Stock

| Name | Date Acquired | Certificate Number | No. of Shares |
|---|---|---|---|
| American Gas Furnace Co. | 12–11–46 | 121 | 1 |
| Grubbs, O. S. & Sons | 7–20–46 | 85 | 1 |
| Pgh. Commercial Heat Treating Company | 7–20–46 | 86 | 1 |
| Picard, Nick J. | 7–15–46 | 84 | 1 |
| Myers and Winters | 8– 2–46 | 88 | 1 |
| Lichtenthaler, William R. | 9–12–46 | 90 | 1 |
| Oswald, Louis W. | 8–21–46 | 89 | 1 |
| Davis, David W. & Catherine V. | 9–19–46 | 91 | 1 |
| Modern Collet & Mach. Co. | 7–30–46 | 87 | 1 |
| Total Shares | | | 9 |

Common Stock

| Name | Date Acquired | Certificate Number | No. of Shares |
|---|---|---|---|
| Duffy, Edward J. | 6–10–46 | 64 | 2 |
| Wilhelm, Lena A. | 6–10–46 | 65 | 12 |
| Losa, Olga | 6–10–46 | 66 | 8 |
| Pilkey, Alice E. | 6–10–46 | 67 | 1 |
| Polachek, Jules J. | 6–10–46 | 68 | 6 |
| Fulton, Dr. Louis C. | 6–10–46 | 69 | 6 |
| Sullivan, Anna | 6–10–46 | 70 | 2 |
| Caird, J. Wilson | 6–10–46 | 71 | 12 |
| American Gas Furnace Co. | 12–11–46 | 131 | 1 |
| Grubbs, O. S. & Sons | 7–20–46 | 94 | 1 |
| Pittsburgh Commercial Heat Treating Company | 7–20–46 | 95 | 1 |
| Picard, Nick J. | 7–15–46 | 93 | 1 |
| Modern Collet & Mach. Co. | 7–30–46 | 96 | 1 |
| Myers & Winters | 8– 2–46 | 97 | 1 |
| Lichtenthaler, William R. | 9–12–46 | 100 | 1 |
| Oswald, Louis W. | 8–21–46 | 98 | 1 |
| Davis, David W. and Catherine V. | 9–19–46 | 101 | 1 |
| Total Common Shares | | | 58 |

(This entire list represents fresh money paid into the Reorganized Company by these old stockholders or by creditor interests, pursuant to the above quoted provisions of the Plan.)

Prior to the confirmation of the Plan, also, certain creditor interests had acquired the interests of other creditors, by assignment, so that, when issued, those assigned rights came by the issuance of shares of stock.[2]

Of all of the present stockholders of the Reorganized Company, how many have hypothecated their shares, or otherwise handled them, the Trustee has no means of knowing at this time; to date, the Reorganized Company, upon request, pursuant to instructions of the holders, has officially noted changes of ownership of shares in the Reorganized Company to the people and with regard to the transactions set forth as follows.[3]

[2] Preferred Stock

| Name | | Date Acquired | Certificate Number | No. of Shares |
|---|---|---|---|---|
| Williams & Company, Inc. | | 6–10–46 | 64 | 25 |
| Assignors: | Shares | | | |
| Braunlich-Roessle Co. | 9 | | | |
| General Office Equipment Company | 2 | | | |
| Austin Givens, Inc. | 2 | | | |
| Hartley-Rose Belting Company | 9 | | | |
| By reason of accumulation | 3 | | | |

Common Stock

| Name | | Date Acquired | Certificate Number | No. of Shares |
|---|---|---|---|---|
| Williams & Company, Inc. | | 6–10–46 | 72 | 25 |
| Assignors: | | | | |
| Braunlich-Roessle Co. | 9 | | | |
| General Office Equipment Company | 2 | | | |
| Austin Givens, Inc. | 2 | | | |
| Hartley-Rose Belting Co. | 9 | | | |
| By reason of accumulation | 3 | | | |

[3] Preferred Stock

| Name of Present Stockholder | Transferred From | Date of Transfer | Cert. No. | Shares |
|---|---|---|---|---|
| Winters, M. T. and Nellie W. Winters | Myers & Winters | 2–19–47 | 123 | 5 |
| Do | Do | 2–19–47 | 124 | 5 |
| Do | Do | 2–19–47 | 125 | 8 |
| Davis, David W. and Catherine V. Davis | Davis, David W. | 9–19–46 | 91 | 51 |
| Lichtenthaler, Wm. R. & Annette Berg Lichtenthaler | Lichtenthaler, W. R. | 1– 6–47 | 122 | 42 |
| Lawson, Lynn J. | Sheriff, Lindsay, Weis & Hutchinson | 3– 1–47 | 126 | 16 |
| Hutchinson, Paul E. | Do | 3– 1–47 | 127 | 10 |
| Betz, Richard J. and/or Miriam D. Betz | Betz, Richard J. | 4– 4–47 | 129 | 56 |
| Total Preferred Stock | | | | 193 |

It is contended by the Stockholders' Protective Committee that the company has continued to operate with a profit up to the present time, and that the financial picture of the Reorganized Company indicates that the company is worth at the present time in excess of one-half million dollars. That considering the past and present earnings of said company, together with its future orders and its present organization, the sale of this company would bring at least one-half million dollars. The control and ownership of the company is held almost exclusively by the former creditors who were given preferred stock and common stock in lieu of their claims against the old company.

On February 7, 1947, the Stewart-Warner Corporation made an offer of $225,000 for the settlement of the Trustee Debtors' Counter-claim. This order was confirmed by the Court on the 24th day of February, 1947. The motion now pending before the Court in substance requests the Court to appoint a Master or examiner for the purpose of determining the value of the holdings of the former creditors in the Reorganized Company as of the date payment of the settlement was made to the Trustee, and to amend the order having to do with the reorganization of said company approved by Judge Schoonmaker, now deceased, and Judge Gibson, by providing as follows:

That the former creditors of said company who now control and own the Reorganized Company as preferred and common stockholders should realize and receive the full amount of their claim plus interest on the original amount of their indebtedness, at the regular rate, from the date of bankruptcy on May 12, 1941 to date; provided, however, that in no event shall the former creditors, most of whom are now the preferred and common stockholders of said company, realize more than the original amount of the indebtedness plus interest.

That said creditors or stockholders are to be entitled to share in the net proceeds of the settlement of $225,000 only if there is a deficiency between the value of the present holdings, as compared with the original indebtedness of the former creditors plus interest to date and then only to the extent thereof.

It is argued this position is supported by the fact that the proceeds of the Stewart-Warner litigation would not pass unto the Reorganized Company, although the reorganization proceeding provided that the net proceeds shall be distributed or disposed of as follows:

"1. Retirement of the issued preferred shares of the capital stock of the Reorganized Company.

"2. If the proceeds are insufficient for that purpose, it should be distributed equally between the preferred shares.

"3. Any balance remaining is to be distributed among the present preferred and common shares of the debtor as a liquidating dividend."

In other words, it is contended by the Stockholders' Committee that the distribution of the net proceeds in the Stewart-Warner litigation should be withheld until it is determined whether or not the value of

### Common Stock

| Name of Present Stockholder | Transferred From | Date of Transfer | Cert. No. | Shares |
|---|---|---|---|---|
| Farrell, William P. | Myers & Winters | 9–12–46 | 99 | 18 |
| Davis, David W. and Catherine V. Davis | Davis, David W. | 9–19–46 | 101 | 51 |
| Lichtenthaler, W. R. & Annette Berg Lichtenthaler | Lichtenthaler | 1– 6–47 | 132 | 42 |
| Lawson, Lynn J. | Sheriff, Lindsay, Weis and Hutchinson | 3– 1–47 | 135 | 16 |
| Hutchinson, Paul E. | Do | 3– 1–47 | 134 | 10 |
| Betz, Richard J. and/or Miriam D. Betz | Betz, Richard J. | 4– 4–47 | 136 | 56 |
| Total Common Stock | | | | 193 |

the holdings of the former creditors in the Reorganized Company is insufficient to cover their indebtedness. That the proceeds of this asset should be used first to pay the deficiency, if any, and if there is a balance, the same should be turned over to the former stockholders of the Debtor Company.

At the time of the argument on said motion, which was held March 14, 1947, the amount of $225,000 had not been paid by the Stewart-Warner Corporation, but it is our understanding that payment has now been made to the Trustee. However, if favorable consideration would be given the petition filed by the Stockholders' Committee, it would be necessary to have the Master evaluate the value of the stock in the new company as of the date that payment was made to the Trustee, which was April 4, 1947.

It appears that the former creditors, now stockholders of the Reorganized Company, made various advancements to the Trustee so that he could first, defend the patent suit against the Debtor Company, and secondly, to pursue the counterclaim that had been filed by the Debtor Company.

It is contended that the real owners of the proceeds of this fund are the stockholders of the Debtor Company for, in substance, the order heretofore referred to placed the stockholders of the Debtor Company in a position of remaindermen or residuary legatees. Therefore, the extent of the lien of the former creditors can only be determined by a properly appointed Master or Examiner to evaluate the worth of the stock as of April 4, 1947.

The plan of reorganization of Universal Lubricating Systems, Inc., filed by Austin L. Staley, as Trustee in Reorganization, was approved by Order of this Court entered by Judge Schoonmaker, now deceased, on March 12, 1945. An appeal from said Order was taken to the Circuit Court of Appeals for the Third Circuit by the Stockholders' Protective Committee, which Court affirmed the order of the District Court. 150 F.2d 832, and certiorari was denied 326 U.S. 744, 66 S.Ct. 58.

Subsequently an order was entered by Judge Gibson on November 23, 1945, confirming the plan of reorganization, and on May 3, 1946, Judge Gibson entered an order for the consummation of the plan.

It is contended by the Trustee in Reorganization:

1. That the Stockholders' Protective Committee by its petition filed March 4, 1947, seeks to have the Court now set aside all of its previous orders with reference to approval, confirmation and consummation of the plan of reorganization.

2. That the position of the Stockholders' Protective Committee that the present holders of the preferred stock, who were the former creditors of said company, may upon distribution of the net proceeds of said settlement receive more than one hundred (100) cents on a dollar on their claim, with interest, is without cause, basis or justification:

(a) For the reason that the preferred stockholders have not received one cent by way of dividend or payment since the reorganization of said company.

(b) That the costs and expenses of the action against Stewart-Warner Corporation and legal expenses are to be deducted from the fund of $225,000.00 before any funds are made for distribution to the preferred stockholders of the Reorganized Company.

(c) That the orders of this Court which approved, confirmed and consummated the plan of reorganization are of such legal effectiveness as to deprive the stockholders of any claim for equitable relief.

■ It was the duty of the Court sitting in reorganization, and prior to the approval, confirmation and execution of the order to permit the consummation of the plan, to make positive that the plan was fair and equitable as a matter of law even though the percentage of the various classes of security holders required by section 77, subs. b, f, of the Bankruptcy Act, 11 U.S. C.A. § 205, subs. b, f, for the confirmation of the plan had consented thereto. Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 114, 60 S.Ct. 1, 84 L.Ed. 110.

■ To the extent of their debts, creditors are entitled to priority over stockholders against all property of an insolvent cor-

poration. Kansas City Terminal R. Co. v. Central Union Trust Co., 271 U.S. 445, 455, 46 S.Ct. 549, 70 L.Ed. 1028.

Chapter X of the Bankruptcy Act requires that a plan shall first have the approval of the judge (section 173, 11 U.S. C.A. § 573) after the hearing provided in section 169 and section 170, 11 U.S.C.A. §§ 569, 570; the parties interested must then accept it at a second hearing as provided in section 174, 11 U.S.C.A. § 574, after which it is ready for "confirmation" under section 221, 11 U.S.C.A. § 621; it must then be "consummated" (sections 224–227, 11 U.S.C.A. §§ 624–627), and when consummated, the judge must enter a final decree (section 228, 11 U.S.C.A. § 628) which discharges the debtor of all its debts, cuts off the shareholders, and discharges the trustee.

■■■ A plan of reorganization to bind the unsecured creditor must give precedence to, and recognize, the superior importance of the creditor's claim over any interest of the stockholder in the old company. Where the same class of securities is offered to both unsecured creditors and to stockholders, the difference being that the stockholders are called upon to pay an assessment, or a relatively greater assessment than that asked of creditors, it may nevertheless be fair and binding, if the court is of the opinion that it could reasonably be expected under all existing circumstances; but the prior rights of creditors must always be recognized. Kansas City Terminal Ry. Co. v. Central Union Trust Co., 271 U.S. 445, 46 S.Ct. 549, 70 L.Ed. 1028.

■■■ Whether a company is solvent or insolvent in either the equity or bankruptcy sense, "any arrangement of the parties by which the subordinate rights and interests of the stockholders are attempted to be secured at the expense of the prior rights" of creditors "comes within judicial denunciation." Northern Pacific Ry. Co. v. Boyd, 228 U.S. 482, 33 S.Ct. 554, 560, 57 L.Ed. 931; Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110; Consolidated Rock Products Co. v. DuBois, 312 U.S. 510, 61 S.Ct. 675, 85 L.Ed. 982.

■■■ It is not permissible in a reorganization proceeding, where stockholders are given a right to participate in a plan, to appropriate any part of the full value of all property belonging to the bankrupt corporation in favor, or for the benefit of stockholders without compensation. Kansas City Terminal R. Co. v. Central Union Trust Co., 271 U.S. 445, 46 S.Ct. 549, 70 L.Ed. 1028.

In the case before the Court while litigation has been pending, the earnings of the company have been insufficient to pay the stipulated rate of dividend on preferred stock, and the creditors on that account have lost the interest to which they were entitled, since the stock is not cumulative.

■■■ It is not fair and reasonable to permit stockholders to participate in a reorganization without requiring them to make a fresh contribution of capital, since the creditor has full and absolute priority against the corporate assets where the debtor is insolvent. Criteria for exclusion or inclusion of old stockholders in the reorganization under 77B, 11 U.S.C.A. § 207, are the same whether the petition be voluntary or involuntary. Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110.

■■■ Generally, additional funds are essential to the success of the undertaking, and it will be impossible to obtain them unless stockholders are permitted to contribute and retain an interest sufficiently valuable to move them. There were not sufficient assets in this estate to pay the creditors in full and, in fact, it has been stated that the creditors would have only received 15% of the amount of their claims if the company had been liquidated. As a result of which, the creditors were entitled to priority over the stockholders against all of the property of said insolvent company. The stockholders' participation must, therefore, be based on a contribution in money or in money's worth reasonably equivalent in view of all circumstances to the participation of all stockholders. Also since this corporation was insolvent, the stockholders could have been excluded from any plan of reorganization. In re 431 Oakdale Avenue Building Corp., D.C., 28 F.Supp. 63.

Such a rule does not require the impossible and make it necessary to pay an unsecured creditor in cash as a condition of stockholders retaining an interest in a reorganized company. The creditors' interests can be preserved by the issuance of preferred stock. Northern Pacific Ry. Co. v. Boyd, 228 U.S. 482, 33 S.Ct. 554, 57 L. Ed. 931.

When the Court confirms a plan in reorganization, the future fate of the corporation is not within the control of the bankruptcy court nor could that court reserve power to adjudicate controversies in which the corporation might become involved. Congress did not intend that the bankruptcy court should, after approval of the plan, under Chapter X, Bankruptcy Act, 11 U.S.C.A. § 501 et seq., have power to remain a "wet nurse" to the reorganized company.

It is just as important that there should be a place to end as it is that there should be a place to begin litigation. There comes a time in all litigation when the order of the court is final, and we think legislative intent to this effect was given by this provision of the Bankruptcy Act. Section 207, subsection h, now Section 628 of Title 11 U.S.C.A.

A court in bankruptcy has no terms, but sits continuously. The rule denying power to a court of equity to vacate a decree after expiration of the term in which it was entered is, therefore, inapplicable to a court of bankruptcy. The court of bankruptcy, in a proceeding under 77B of the Bankruptcy Act, has the power, in the exercise of sound discretion, to re-open an order dismissing a petition for reorganization, notwithstanding that the time allowed for the appeal of the order has expired. The bankruptcy court, in the exercise of sound discretion, if no intervening rights will be prejudiced by its action, may grant a rehearing upon application diligently made. Wayne United Gas Co. v. Owens Illinois Glass Co., 300 U.S. 131, 57 S.Ct. 382, 81 L.Ed. 557; Kenyon v. Chain O'Mines, Inc., 10 Cir., 107 F.2d 160; Curtis et al. v. O'Leary et al., 8 Cir., 131 F.2d 240, 245; Kimm et al. v. Cox et al., 8 Cir., 130 F.2d 721

A plan of reorganization, after it has been assented to by the creditors, precludes the court from altering or modifying the plan in any material respect either before or after confirmation, except after resubmission to, and assent by, the creditors. This is especially true where the relief sought was foreign to, and in contravention of, the plan of reorganization as assented to by the creditors and approved by the court. In re Wedgewood Hotel Co., 7 Cir., 125 F. 2d 327.

It is argued in this case that the rights of the former creditors, who are now the stockholders of the Reorganized Company, would not be prejudiced in any way. This argument is in no wise convincing for while the rights of the third parties here, admittedly would be harmed to only a small degree, the amount of the harm done should not be controlling but rather whether harm at all would be done to the stockholders of the new corporation. The provisions in the Bankruptcy Statute, Section 207, subsection h, 11 U.S.C.A., should only be set aside, if at all, when it is clear and unmistakable that no possibility of harm will result therefrom. In re Peyton Realty Co., 3 Cir., 148 F.2d 771.

The effect of a final decree in a bankruptcy decree is to deprive the district court of any further jurisdiction in the matter except such as may be reserved in the order itself, and to do what is necessary to effectuate the plan of reorganization. In the absence of such reservation it deprives the court of any jurisdiction to change or modify the terms of the plan previously approved and consummated. In re Tom Moore Distillery Co., D.C., 52 F.Supp. 938; In re President Realty Co., Inc., D.C., 67 F.Supp. 390; Reese v. Beacon Hotel Corp., 2 Cir., 149 F.2d 610; In re 4145 Broadway Hotel Co., 7 Cir., 131 F.2d 120; In re Detroit Leland Hotel Co., D.C., 61 F.Supp. 686.

The petitioners persist in their position that irrespective of the closing of an estate in bankruptcy by final decree, it is always within the discretion of the Bankruptcy Court to re-open an estate in order to give equitable relief to proper parties and bring about a fair and impartial administration of justice. At the time of the reorganiza-

tion, the stockholders in the old company were given the right and privilege to buy within the new company; that is, for every ten (10) shares of common stock in the old company, the stockholders were to have the right to secure one (1) share of common stock in the new company upon the payment of the amount of $10. That each preferred stockholder in the company was given the right and privilege to secure one share of common stock in the new company by the payment of the amount of $10. During said reorganization and prior to the final decree, very few of the former stockholders attached little or no value to the success of the reorganized company.

It seems that nine (9) of the preferred and seventeen (17) of the common stockholders in the old company purchased a total of 67 shares of common stock in the reorganized company.

In addition thereto, there were issued 25 shares of preferred and 25 shares of common stock in the reorganized company to assignees of creditors who were entitled thereto.

Furthermore, 193 shares of preferred and 193 shares of common stock have been assigned or transferred to various persons since said stock was first issued in the reorganized company.

The old stockholders, as a whole, thought and believed that the reorganized company would not succeed, and, therefore, were reluctant to invest any additional funds; and for all practical purposes did, in fact, abandon all interest or trust which they had in the success of the new company. The destiny of the reorganized company was left to those who had faith and were willing to invest new money and extend much effort in the rehabilitation of the new company. Since the period of reorganization, some of said stock has been transferred or assigned to third persons whose rights are certainly entitled to as much, if not more, consideration as are the rights of those who now ask the Court to modify the decree. The market value of the new stock to a great extent has been influenced by the success of the company since reorganization and its financial condition as reflected in its financial reports or balance sheets.

Where a request was made by stockholders to vacate a decree in order that their securities could be exchanged for stock in the new company after the period set forth in the reorganization plan had expired, the Court held that if sanction is given to the vacation of said decree, there is no assurance that the owners of the remainder of the securities not exchanged will not present their application for consideration. By the provisions of Section 207, subsection h, 11 U.S.C.A., of the Bankruptcy Act, when the final decree approving the reorganization is given, the same is a finality. It is just as important that there should be a place to end as it is that there should be a place to begin litigation. There comes a time in all litigation when the order of court is final and we think legislative intent to this effect was given to the Bankruptcy Act. In re Peyton Realty Co., 3 Cir., 148 F.2d 771; In re Sherland Bldg. Corp., D.C., 29 F.Supp. 985; In re Tom Moore Distillery Co., D.C., 52 F.Supp. 938; In re Corona Radio & Television Corp., 7 Cir., 102 F.2d 959.

In the case of Knapp v. Detroit Leland Hotel Co., 6 Cir., 153 F.2d 715, bondholders requested the reorganization proceedings to be re-opened after the expiration of the period provided for in the final decree, in order that their bonds could be transferred. The Court held that a provision of a statute which speaks with such finality as Section 207, subsection h, of the Bankruptcy Act should only be set aside, if at all, when it is clear and unmistakable that no possible harm will result therefrom.

Where a stockholder is given a fair opportunity in reorganization proceedings to protect his interests and refused to avail himself of it, he may be cut off by the final decree. Northern Pacific Ry. Co. v. Boyd, 228 U.S. 482, 33 S.Ct. 554, 57 L.Ed. 931.

To justify a retention of interests by stockholders of a company in reorganization, it should appear that said stockholders have furnished an additional consideration or have an equity in the estate of the debtor after the rights of the creditors are fully provided for in some way. In re Barclay Park Corp., 2 Cir., 90 F.2d 595;

788

In re 620 Church Street Corp., 299 U.S. 24, 57 S.Ct. 88, 81 L.Ed. 16.

To grant the relief prayed for by the petitioners would depreciate the value of the common stock in said company. Since the former stockholders were given the right and privilege to invest in the new company and elected not to do so, and the interests of the third persons may be prejudiced by the granting of the relief desired, it would appear inequitable to favorably consider the motion for the equitable relief requested.

The petition of the Universal Stockholders' Protective Committee for a rule to show cause why the Order of March 7, 1945, in the matter of the reorganization should not be amended and a Master appointed for the purpose of determining the present value of the holdings of the preferred stockholders, who were the former creditors of the reorganized company, is refused.

GIBSON, District Judge.

I hereby join and concur in the within opinion.