In re CORONA RADIO & TELEVISION CORPORATION.

SEEBURG et al. v. SCOTTISH AMERICAN CO. et al.

Nos. 6673, 6719.

Circuit Court of Appeals, Seventh Circuit.

April 1, 1939.

960

Sidney J. Wolf and Arthur Wolf, both of Chicago, Ill., for appellants.

J. A. Cobbey, A. L. Shapiro, B. C. Schiff, Louis Goldman, R. G. Dreffein, and M. J. Hirschenbein, all of Chicago, Ill., for appellees.

Before SPARKS, MAJOR, and TREANOR, Circuit Judges.

MAJOR, Circuit Judge.

These are appeals (consolidated) from an order of the District Court, entered May 10, 1938, allowing a claim in favor of Scottish American Company, a Corporation, and James Talcott, Incorporated, in the amount of $9173.99, and directing its payment by the debtor corporation. The matter was heard upon the petition of said corporations filed April 5, 1938, and the answers of the creditors' advisory committee and N. Marshall Seeburg, J. P. Seeburg and the debtor.

April 20, 1937, the debtor filed a voluntary petition for reorganization under Section 77B of the Bankruptcy Act, § 207, Title 11 U.S.C., 11 U.S.C.A. § 207. April 21, 1937, an order was entered approving said petition as being properly filed and in good faith, continuing the debtor temporarily in possession, and on May 18, 1937, an order was entered continuing the debtor permanently in possession.

April 28, 1937, an order was entered authorizing the debtor, among other things, to sell its accounts and bills receivable without recourse, to discount the same and to pledge the same as collateral in order to borrow money for the purpose of facilitating the manufacture of its products.

May 12, 1937, an order was entered classifying the claims, ordering all claims to be filed on or before July 1, 1937, and requiring the debtor to give notice of the foregoing to the creditors and stockholders by publication and mailing a copy of said order to each known creditor, stockholder and creditor, which notice was given as directed.

June 10, 1937, a written contract was entered into by and between Frank P. O'Hara and Vernon A. Kamin, first parties, who were the owners of all the outstanding shares of the capital stock of the debtor corporation, and N. Marshall Seeburg and J. P. Seeburg, second parties, in which contract the second parties agreed to purchase all of the shares of the capital stock of the debtor corporation for the sum of $10,000 cash and, in addition thereto, agreed, as a part of such purchase price, to guarantee the payment of all of the outstanding debts and liabilities of said debtor, not to exceed $96,500, in conformity with the terms, conditions and provisions of a certain plan of reorganization which was made a part of said agreement, and the second parties also agreed to as-

sume the payment of the rent upon the premises then occupied by the debtor and also agreed to pay the cost and expenses of the administration in the reorganization proceedings to the extent of counsel fees not to exceed $5250, and other expenses of administration not to exceed $400. The said agreement further provided that it should become effective five days after the approval of the plan of reorganization by the court, when it was to be consummated, at which time the old directors and officers of the corporation should resign and their successors elected. It was also provided that the contract should be presented to the court for its approval in connection with the plan of reorganization, and, in the event that it was not approved, said agreement, at the option of the second parties, should become null and void.

July 13, 1937, a plan of reorganization was filed which, among other things, included within its provisions, the contract aforesaid. The plan provided that unsecured creditors should be paid in twelve monthly installments, commencing sixty days after the approval of said plan, said installments to be evidenced by the negotiable notes of the debtor guaranteed by N. Marshall Seeburg and J. P. Seeburg, and that if the total of unsecured claims, as allowed, should exceed a certain sum, then the claim of each creditor was to be reduced pro rata so that the sum total would not exceed said sum. It was also provided that certain claims in favor of the United States were to be paid in full in the same number of installments and secured in the same manner. Provision was made for the execution of other provisions of the contract in accordance with its terms.

July 26, 1937, an order was entered reciting, among other things, that the debtor had proceeded in all respects as required by Section 77B, and that all notices required had been given, approving the aforesaid contract as a part of the plan, and providing "that said plan shall be binding upon the debtor, all shareholders and all creditors thereof, secured or unsecured, whether or not affected by the plan or whether or not their claims had been filed." This order also required all persons having claims for fees or expenses in connection with the reorganization proceeding to file their petitions for such allowances on or before July 28, 1937, and set the matter for July 30, 1937, for the

entry of a final decree and for the disposition of such claims.

On July 30, 1937, the debtor filed its report of compliance with the decree of July 26, 1937, and on the same date a final decree was entered finding "that due notice of the entry of said final decree had been given to all parties entitled to such notice, that due notice of application for the allowance of fees or expenses to parties entitled thereto had been given to all parties entitled to such notice", and finding and decreeing that "said plan of reorganization and all orders of said court had been fully executed, accomplished and carried out." Attorney fees were allowed in the amount of $5250, which were directed to be paid by the debtor, N. Marshall Seeburg and J. P. Seeburg; the debtor was discharged from all of its debts, claims and liabilities; all creditors, claimants and stockholders of the debtor restrained from commencing any suit at law or in equity against it or any of its assets, and "ordering and decreeing that the said proceedings be and they are thereby terminated and finally closed," with the exception that the court thereby reserved jurisdiction to hear and determine the objections of the debtor to certain sales and excise tax due the United States Government.

April 5, 1938, Scottish American Company and James Talcott, Inc., filed in the reorganization proceedings, a petition alleging, among other things, that on April 29, 1937, a written contract was entered into by and between the debtor corporation and the Scottish American Company, which contract was duly approved by the attorney for the creditors' advisory committee. In and by said contract, the Scottish American Company agreed to purchase certain accounts receivable of the said debtor corporation under the circumstances and conditions set forth in said contract. By the terms of the contract, Scottish American Company was authorized to assign for collection, said accounts receivable to James Talcott, Inc. The petition also alleged that the debtor, from time to time, subsequent to April 28, 1937, and pursuant to the order of the court entered as of that date, sold certain of its accounts receivable to Scottish American Company, upon which there remained unpaid as of the date of said petition, accounts totaling $9,173.99. The petition charged that the final decree of July 30, 1937, was entered without notice to the

petitioners and charged fraud on the part of the debtor in permitting the entry of the decree without notice. This charge of fraud was stricken by order of court. The petition contains other allegations which are the subject of controversy, but which have no bearing upon the jurisdictional question. Answers were filed to the petition denying the material allegations thereof, including the allegation that the final decree was entered without notice to the petitioners, denying that the court had jurisdiction to entertain such a petition and that the petitioners were entitled to the relief sought. After a hearing upon the petition and the answers thereto, the court entered its order of May 10, 1938, which is the one appealed from.

The question presented is: Did the court have jurisdiction to enter the order appealed from after the entry of the final decree, without therein expressly retaining jurisdiction for such purpose? Appellees' argument for jurisdiction is based largely upon the reservation contained in the order of July 26, 1937, confirming the plan. In this order the court reserved jurisdiction as disclosed in the footnote.[1] It is asserted that the reservation contained in that order was sufficient to authorize the court to entertain the petition after the entry of the final decree, notwithstanding no reservation was contained in the latter.

 We are unable to so conclude. The petition had no relation to the consummation of the plan, to the transfer of the assets, to the issuance, delivery and distribution of cash, notes, etc., in accordance with the plan, or, to the enforcement or carrying out of the provisions of the plan. In fact, these reservations, as we read them, have reference solely to matters connected with the plan of reorganization. The words relied on mostly by appellees, found in Paragraph 3 of the reservation "and specifically to consider, determine and adjudicate the amount and validity of any claims heretofore, or hereafter filed in this proceeding" could not have been intended to and did not include a claim filed subsequent to the entry of a final decree. If, however, the reservation is susceptible of such construction, we are of the opinion that the court was without authority to make such a reservation as to claims not filed until subsequent to the entry of the final decree discharging the debtor from all debts and liabilities. We do not agree with the argument that such authority is found in Section 207 (h). It is there provided upon final confirmation of the plan, the debtor "* * * shall be free and clear of all claims of the debtor, its stockholders and creditors, except such as may consistently with the provisions of the plan be reserved in the order confirming the plan." A final decree is provided for upon the termination of the proceeding and "such final decree shall discharge the debtor from its debts and liabilities, and shall terminate and end all rights and interests of its stockholders, except as provided in the plan or as may be reserved as aforesaid." The language used seems certain that the debtor, by final decree, is to be discharged of all liabilities "except as provided in the plan or as may be reserved as aforesaid" and this sentence can refer only to the language used in connection with the final confirmation of the plan, "except such as may consistently, with the provisions of the plan be reserved in the order confirming the plan." By no stretch of the imagination could the claim here presented be said to be consistent

---

[1] G. This court, in addition to the reservations of jurisdiction made herein, hereby reserves and retains jurisdiction over these proceedings and the subject matter thereof and of the debtor and of the new corporation until such times as the Final Decree is entered herein and thereafter until the following purposes have been accomplished:

"2. To hear and determine any and all controversies with respect to the consummation of the Plan, including the transfer of assets and the creation, issuance, delivery and distribution of cash, notes and securities in accordance with the Plan and as directed by this Order, and to make from time to time such orders modifying, amplifying or extending this Order as may be appropriate for the purpose of enforcing or carrying out the provisions thereof and consummating the Plan hereby confirmed as to this Court may at any time seem proper.

"3. Generally, to determine any and all matters pertaining to these proceedings or to the Plan and not determined heretofore by this Order or other orders of this Court and to make from time to time such further orders as to this Court may seem proper in exercising the powers conferred by the provisions of Section 77B of the Bankruptcy Law, as amended, and specifically to consider, determine and adjudicate the amount and validity of any claims heretofore or hereafter filed in this proceeding."

 

with the provision of the plan. On the contrary it is inconsistent.

The Seeburgs, as heretofore related, entered into a contract with the parties who owned the capital stock of debtor corporation, in which they agreed to assume liability not to exceed a certain amount. This contract was approved by the court and made a part of the plan of reorganization. It was a part of the plan which obtained the approval of the requisite number of creditors of the various classes. In other words, at that time, the creditors were advised as to the manner and extent of the security provided for the payment of their claims. It was upon that basis that their consents were obtained and the plan approved. It seems apparent that a reservation in the plan, which would permit a creditor, subsequent to the termination of the proceedings, to present and obtain the allowance of a claim, thereby reducing the amount available for creditors, and the pro rata share which they would receive would not only be inconsistent with such plan, but would constitute, in effect, a modification without again referring the matter to the creditors for their approval or disapproval. This would be in contravention of Section 207 (f) which provides the manner by which a plan may be modified.

 This court, in the recent case of In re Argyle-Lake Shore Corporation, 7 Cir., 98 F.2d 372, was confronted with a similar, though not decisive, question. There a final decree had been entered which retained jurisdiction in certain respects. We held, in effect, that after a final decree, the court was without jurisdiction except as to such matters as were specifically reserved therein. As heretofore stated, we do not think there was any reservation in the plan by which jurisdiction was retained, and we are also of the opinion that no general reservation contained in a plan could be utilized by the court so as to confer jurisdiction, after a final decree of a matter inconsistent with the plan itself. To so hold would be the equivalent of altering the plan and the contract included therein, without the consent or approval of the debtor, creditors, or parties to the contract.

 Appellees strongly urge that they had no notice of the entry of the final decree and that they will suffer an in-

justice by an adverse ruling. The decree itself recites that all parties had the required notice and there is nothing in the record to prove to the contrary. The petition alleged lack of notice—the answers denied the allegation. The burden in this respect was thus upon the petitioners which they did not sustain. It is admitted they had knowledge of the reorganization proceedings while doing business with the debtor, and could, no doubt, have protected themselves adequately during that time. Instead, it is apparent they relied upon the accounts receivable as security for the money advanced the debtor until after the entry of the final decree fixing and determining the rights and liabilities of all the parties; and then, realizing they were not fully protected, came to the Court for assistance. It was then too late. The position in which they find themselves, unfortunate or otherwise, can not confer jurisdiction. The order of the District Court is reversed.