58

## DURYEE v. ERIE R. CO.
## ERIE R. CO. v. DURYEE.
### Nos. 10785, 10786.

United States Court of Appeals
Sixth Circuit.

June 1, 1949.

Richard Swan Buell, New York City, and Eugene B. Schwartz, Cleveland, Ohio

(Walter T. Margetts, Jr., New York City, Frederick Frey, Cleveland, Ohio, Andrew M. Calamari, New York City, on the brief), for Peter Duryee.

John A. Hadden, and John S. Beard, Jr., Cleveland, Ohio (M. C. Smith, Jr., Cleveland, Ohio, on the brief), for Erie R. Co.

Before HICKS, Chief Judge, and ALLEN and McALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

Appellant is trustee of the property of the New Jersey and New York Railroad Company (hereinafter referred to as New Jersey) in reorganization proceedings under Section 77 of the Bankruptcy Act, 11 U.S.C.A. § 205, in the District Court for the District of New Jersey. Appellee Erie Railroad Company was heretofore reorganized in 1941 under Section 77 of the Bankruptcy Act in the Northern District of Ohio. Appellant brought his suit against the reorganized Erie, asking that the court find all of the obligations and debts of the New Jersey to be obligations of the Erie, was barred by Section 77, sub. f. of the Bankruptcy Act, and by the order entered by the court in the Erie reorganization. and that a judgment be granted against Erie in an amount sufficient to satisfy all such debts plus accrued and penalty interest. Counsel for Erie moved for summary judgment on the ground that appellant's claim, as asserted in his complaint, The district court granted Erie's motion for summary judgment, holding that the suit was barred by the provisions of the Bankruptcy Act and by the "bar" order entered pursuant to that statute in the Erie reorganization proceedings; and the trustee of New Jersey appeals.

A brief review of the pleadings and reorganization proceedings will serve to clarify the issues and the contentions of the parties. Appellant's complaint alleges that from 1897 until June 30, 1938, New Jersey was continuously and completely dominated, controlled, managed, and unifiedly operated by Erie as a mere department adjunct and instrumentality; that such domination and operation were accomplished by voting stock to elect directors of New Jersey, a substantial majority of whom were either directors, officers, or leading employees of

the Erie, and under its control; that such directors caused to be carried on an operating contract with Erie and caused to be executed collective bargaining contracts with New Jersey's operating employees as joint employees of both railroads; that they caused New Jersey's principal office to be removed from New York to Cleveland, Ohio, in conjunction with the removal of Erie's offices; that all documents necessary to be executed on behalf of New Jersey were executed by individuals whose primary duties were to Erie; that Erie, directly or indirectly, from time to time paid interest on the bonds issued by New Jersey, and openly represented to the public that New Jersey was part of the Erie Railroad System. On the ground that New Jersey was a mere instrumentality in the hands of Erie and that New Jersey's debts were in fact the debts of Erie, appellant asked judgment for such indebtedness against the reorganized Erie.

The answer filed by Erie to the foregoing complaint sets forth that in 1938, Erie filed its petition in the Northern District of Ohio for reorganization under Section 77 of the Bankruptcy Act, and that by various orders thereafter entered by the court, a plan of reorganization for Erie was approved, and thereafter confirmed; and that by order No. 386, entered December 20, 1941, the court provided for the vesting of the estate of Erie Railroad Company, debtor, and all right, title, and interest of the trustees therein, in Erie Railroad Company, as reorganized, upon the terms and conditions and subject to the provisions contained therein. The answer further set forth that in June 1938, New Jersey filed in the District Court for the Northern District of Ohio its petition for reorganization under Section 77 in connection with the Erie reorganization proceedings; that trustees were appointed for New Jersey and qualified and took possession of its property; that thereafter, the Bankruptcy Court approved and confirmed the final report and account of the New Jersey trustees and duly discharged them; that, in accordance with the provisions of an order entered in the Erie reorganization proceedings in December 1941, all of the property of the New Jersey vested in Peter Duryee, as trustee appointed by the District Court for the District of New Jersey, in proceedings under Section 77 for the reorganization in that court; that from the commencement of the New Jersey reorganization proceedings up until December 31, 1941, control of New Jersey was in the hands of the Ohio court under Section 77, and since then, was, and now is in the District Court for the District of New Jersey under Section 77.

The chief defense set up in the answer filed by Erie was that appellant's cause of action, accruing many years prior to the commencement of the reorganization proceedings, was barred by the above mentioned order No. 386 in the Erie reorganization proceedings. In addition, Erie pleaded a counterclaim against New Jersey in the amount of $6,803,922.35, which will be hereafter considered.

In appealing from the entry of the summary judgment, the trustee of New Jersey contends that the claim now asserted was not covered by the "bar" order; that, in any event, it would be inequitable and a fraud upon the District Court of Ohio and of New Jersey, the trustee, and the creditors, to bar appellant's suit, as well as being contrary to public policy; that, to afford the relief sought, the corporate entity of New Jersey should be disregarded for the reason that it was the alter ego or instrumentality of Erie; and that, in accordance with the doctrine announced in Consolidated Rock Products Co. v. Du Bois, 312 U.S. 510, 61 S.Ct. 675, 85 L.Ed. 982, all debts and obligations of New Jersey should be considered to be the debts and obligations of Erie and a judgment should be entered on behalf of the trustee of New Jersey against Erie in an amount sufficient to satisfy all such debts.

The issue presented is whether Section 77, sub. f of the Bankruptcy Act and the so-called bar order entered by the district court in the Erie reorganization constitute a complete bar and defense to the assertion, at the present time, of claims raised by appellant trustee against the reorganized Erie Railroad Company.

Section 77, sub. f of the Bankruptcy Act provides:

"Upon confirmation by the judge, the provisions of the plan and of the order of

confirmation shall, subject to the right of judicial review, be binding upon the debtor, all stockholders thereof, including those who have not, as well as those who have, accepted it, and all creditors secured or unsecured, whether or not adversely affected by the plan, and whether or not their claims shall have been filed, and, if filed, whether or not approved, including creditors who have not, as well as those who have, accepted it.

"Upon confirmation of the plan, the debtor and any other corporation or corporations organized or to be organized for the purpose of carrying out the plan, shall have full power and authority to, and shall put into effect and carry out the plan and the orders of the judge relative thereto, under and subject to the supervision and the control of the judge, the laws of any State, or the decision or order of any State authority to the contrary notwithstanding. The property dealt with by the plan, when transferred and conveyed to the debtor or to the other corporation or corporations provided for by the plan, or when retained by the debtor pursuant to the plan, shall be free and clear of all claims of the debtor, its stockholders and creditors, and the debtor shall be discharged from its debts and liabilities, except such as may consistently with the provisions of the plan be reserved in the order confirming the plan or directing such transfer and conveyance or retention, * * *."

The so-called bar order entered by the district court in the Erie reorganization, pursuant to the above section of the Bankruptcy Act, in so far as here pertinent, provides:

"(3) At 12:01 A. M. Eastern Standard Time on December 22, 1941 (hereinafter referred to as the 'Closing Time'), all of the business assets, franchises and property, of every kind and character, real, personal and mixed, constituting the estate of Erie Railroad Company, Debtor, and all right, title and interest of the Trustees of the property of Erie Railroad Company therein, shall vest in and become the absolute property of Erie Railroad Company, free and clear of all rights, claims, liens, incumbrances and interests of the Trustees of the property of Erie Railroad Company

* * *, of the holders of the First Preferred, Second Preferred and par value Common Stock of Erie Railroad Company, and of the creditors of Erie Railroad Company, * * * except as hereinafter provided, and Erie Railroad Company * * * shall thereupon, as of said time and date, automatically be forever released and discharged from all of their respective debts, obligations and liabilities except as hereinafter provided.

* * * * * *

"From and after the Closing Time all persons, firms and corporations whatsoever and wheresoever situated, located or domiciled, are hereby restrained and enjoined from interfering with, or taking steps to interfere with Erie Railroad Company, its officers and Agents, or the operation of the lines of railroad or properties or conduct of the business of Erie Railroad Company, by reason of or on account of any claim against or interest in Erie Railroad Company which shall have been discharged under the Plan of Reorganization and this Order, and all such persons, firms and corporations are hereby restrained and enjoined from otherwise interfering with the carrying out of the Plan of Reorganization."

Appellant contends, at the outset, that the claim asserted by him in this suit was not covered by the "bar" order, entered by the court in the Erie reorganization. An examination of that order discloses that it contained directions for the payment of various kinds of claims, and the claims therein included were defined as claims which were admitted to be due and payable, or those which had been finally allowed for payment. It was further provided in the order: "All such claims now admitted to be due or which have been finally allowed shall be paid as soon as practicable after the Closing Time. All other such claims shall be paid as and when they are admitted to be due or finally allowed." Reservation of the jurisdiction of the court in the reorganization proceedings was also included in the "bar" order, in the following provision: "This Court hereby reserves jurisdiction for all purposes necessary to put into effect and carry out this order and the Plan of Reorganization and any other orders en-

tered by this Court relative thereto, including, without limiting the generality of the foregoing, passing upon claims of creditors of, or claims against, Erie Railroad Company. * * * "

From the foregoing, it appears that the claims mentioned in the bar order are to be passed upon by the court in the reorganization proceeding and are to be paid only if allowed in that proceeding. Since Section 77, sub. f of the Bankruptcy Act provides that the property dealt with by the plan, when conveyed by the debtor or retained by the debtor pursuant to the plan, shall be free and clear of claims of the debtor, its stockholders and creditors, and the debtor shall be discharged from its debts and liabilities "except such as may consistently with the provisions of the plan be reserved in the order confirming the plan or directing such transfer and conveyance or retention," it is clear that any reservation of jurisdiction by the reorganization court is limited to claims provided for in the reorganization plan. It unquestionably follows that the "bar" order could not be construed to permit the assertion, at the present time, of a claim existing prior to the reorganization proceedings. See In re Corona Radio & Television Corporation, 7 Cir., 102 F.2d 959. The claim now asserted by appellant, as a direct obligation of Erie, was one for which provision was made for filing, hearing, and allowance in the Erie reorganization proceedings, and, not having been filed, is barred by the order of the court entered therein.

It is asserted that since the claims of bondholders and other creditors of New Jersey, such as are now represented by appellant trustee, would have to be filed first in the New Jersey reorganization proceedings before being filed in the Erie proceedings and the time for filing in the Erie proceedings would have expired before such claims could have been filed in the New Jersey proceedings, appellant's present claim could not have been intended to be covered by the "bar" order in the Erie proceedings. But appellant is here asserting a claim directly against Erie on the ground that the obligations of New Jersey are in reality the debts of Erie, under the theory that since New Jersey was a mere instrumentality in the hands of Erie, the latter is liable for New Jersey's debts. If such claims can now be asserted directly against Erie, as an indebtedness of that company, we are not told why they could not be asserted directly against Erie by each of the bondholders and creditors of New Jersey or their representative, and why they could not have been filed in the Erie reorganization proceedings before the order finally barring creditors' claims was entered therein. Nor are we informed why such a filing would have to await prior filing in the New Jersey proceedings.

There is something specious about the contention that because the time for filing the claims in the Erie proceedings expired before claims could be filed in the New Jersey proceedings, the creditors and bondholders of New Jersey, now represented by appellant trustee, were, in some way, unjustly foreclosed from asserting their claims in the Erie reorganization. From all that appears, if these claims would be direct obligations of Erie at the present time, they would have been direct obligations of Erie at the time of the latter reorganization proceedings. Moreover, the New Jersey company, itself, before its reorganization proceedings, could have filed the claim now asserted by appellant directly against Erie; or the trustees of New Jersey, in the subsequent reorganization proceedings in the Ohio court, could have filed the claim against Erie prior to the expiration of the time provided for the filing of claims in the Erie reorganization, and prior to the entry of the "bar" order in the reorganization proceedings of the latter company. If New Jersey's bondholders and creditors had a direct claim against Erie, there is no reason apparent from the record why they would be obliged to wait to file their claims first in the New Jersey reorganization proceedings before filing the same claims in the Erie reorganization proceedings; nor was there any reason why they were required to postpone the filing of their claims until a trustee was appointed (in the New Jersey reorganization proceedings) to file their claims for them. As indicated in the pleadings, there were two New Jersey reorganization proceedings, one in the Ohio district court, and a subsequent proceeding in

the New Jersey district court. The trustees in the first New Jersey reorganization proceeding in the Ohio court were appointed before the entry of the "bar" order here in controversy.

It appears that the New Jersey was managed by the same individuals that managed Erie, and that the Ohio trustees in the New Jersey reorganization proceedings were the same individuals that served also as trustees in the Erie reorganization; and it is contended by appellant, under the doctrine laid down in Consolidated Rock Products Co. v. Du Bois, 312 U.S. 510, 61 S.Ct. 675, 85 L.Ed. 982, that where a subsidiary is only an instrumentality of the parent corporation, the latter is in no position to claim that its assets are insulated from the claims of the creditors of the subsidiary, and, accordingly, in this case, the obligations of New Jersey are the direct obligations of Erie. But, since no claim of fraud or constructive fraud is made in the allegations of the complaint, the rule laid down in the Consolidated Rock Products Company case is not here applicable, under the authority of Comstock v. Group of Institutional Investors et al., 335 U.S. 211, 68 S.Ct. 1454, 1463, 92 L.Ed. 1911.

In view of the claim made by appellant trustee that the fact of domination of New Jersey by Erie requires that the obligations of New Jersey be adjudicated to be the indebtedness of Erie, it should be mentioned that the close relationship between Erie and New Jersey was well known, as was also the dominating influence of Erie over New Jersey. In fact, as early as 1937, the New Jersey bondholders had engaged an expert to examine a claim of $5,803,983.-62 which had been filed by Erie against New Jersey, and which was based on cash advances to New Jersey, freight interchanges, rented passenger cars, loss and damage claims, and miscellaneous contract charges. After a complete investigation and examination of the claim, the expert reported to the New Jersey bondholders that acceptance of Erie's claim was warranted. After the trustees had been appointed in the Ohio reorganization proceedings of the New Jersey company, they asked the district court that this large claim be examined by some independent person, who, by reason of experience in such transactions, would be competent to advise the trustees as to the fairness of the charges made by Erie. The Special Master appointed by the court to consider the petition thereupon recommended the appointment of the same expert that had been previously engaged by the New Jersey bondholders themselves to investigate the claim, and upon notice given to all interested parties, the expert in question was appointed, and after considering all the debits and credits between the two companies, subsequently made his report to the Ohio district court that the claim of Erie against New Jersey was warranted. All of the foregoing would seem largely to dissipate appellant's present contention that all the obligations incurred by New Jersey, both by way of bonded indebtedness and that incurred during the course of New Jersey's operations, were, and are, nothing more than the indebtedness of Erie.

Appellant trustee was appointed in the New Jersey reorganization proceedings by the New Jersey district court, after the trustees of New Jersey, in the reorganization proceedings in the Ohio district court, had petitioned that court for their discharge, and after New Jersey bondholders had suggested to the court that they would take appropriate steps for the appointment in New Jersey of a trustee for the New Jersey company. Upon the request of such bondholders to the Ohio district court, and upon the petition of the Ohio trustees of the New Jersey company to authorize a transfer of the New Jersey property in their hands to a trustee appointed by the New Jersey district court, the Ohio district court ordered that all of the New Jersey property should vest in the appellant trustee. Appellant trustee was appointed by the New Jersey court subsequent to the expiration of the time provided for the filing of claims in the Erie proceedings, but prior to the entry of the "bar" order in those proceedings. The time for filing claims in the Erie reorganization expired October 1, 1938; the time for filing claims in the Ohio reorganization proceedings of the New Jersey company commenced October 8, 1938; appellant was appointed trustee in November, 1941; the "bar" order was issued in December, 1941; but, until 1946, neither appellant nor anyone else, appar-

ently, ever considered that the obligations of New Jersey were, in reality, the debts of Erie; and appellant did not commence the present suit until April, 1947.

In this case, there appear no claims or allegations of active fraud, constructive fraud, spoliation, waste, or unfair management to the advantage of Erie and disadvantage of New Jersey which would justify setting aside the "bar" order to permit the assertion of appellant's claims, even were that possible.

We are in complete agreement with the observations made by the district court in its opinion dismissing appellant's action to the effect that the purpose of the bankruptcy law and the provisions for reorganization could not be realized if the discharge of debtors were not complete and absolute; that if courts should relax the provisions of the law and facilitate the assertion of old claims against discharged and reorganized debtors, the policy of the law would be defeated; that creditors would not participate in reorganizations if they could not feel that the plan was final; and that it would be unjust and unfair to those who had accepted and acted upon a reorganization plan if the court were thereafter to reopen the plan and change the conditions which constituted the basis of its earlier acceptance.

■ With respect to appellant's contention that to allow the reorganization order to bar the claim now asserted would be inequitable, fraudulent, and in contravention of public policy, we find nothing to justify such a conclusion. What has already been said with respect to the nonfiling of the claim sufficiently disposes of the contention that the barring of the present suit would be inequitable and against public policy. As to the matter of fraud, there are no allegations in appellant's complaint that there was anything fraudulent, or constructively fraudulent, about the conduct of Erie with respect to its domination of New Jersey, or with regard to the Erie reorganization or the entry of the "bar" order. Standing alone, the fact of domination by a corporation of its subsidiary is not fraudulent. It is not the mere existence of an opportunity to do wrong that invalidates contractual relationships; "it is the un-

conscionable use of the opportunity afforded by the domination to advantage itself at the injury of the subsidiary that deprives the wrongdoer of the fruits of his wrong." Comstock v. Group of Institutional Investors et al., supra.

The counterclaim which was included in the answer filed by Erie has already been mentioned. In its opinion holding that the order in the Erie reorganization proceedings was a bar to the assertion, generally, of appellant's claim, the district court stated that the claim of appellant and the counterclaim of Erie had not yet been adjudicated, and that it would be unjust to hold that the claim of New Jersey could not be set up by way of defense to Erie's counterclaim. The court, therefore, held that there was a substantial controversy still existing with respect to the validity of the claim and counterclaim, and provided for a pre-trial conference to simplify the issues for trial. Erie subsequently dismissed its counterclaim and the court thereupon granted Erie's motion for summary judgment.

In its judgment dismissing appellant's complaint on Erie's motion for summary judgment, the district court went on to hold that appellant could not be charged with laches with respect to the claims asserted in his complaint; that such claims had never been adjudicated; that while they could not be pleaded generally against Erie in the action brought, or as a reason for reopening the Erie plan of reorganization, they might be asserted as a defense and set-off to the claims which Erie had asserted in the counterclaim, which was later withdrawn; and that while appellant's suit was dismissed, such dismissal was without prejudice to the rights of appellant in any other proceeding or action to assert the claim pleaded in the complaint solely as a defense and set-off against the claim or claims of Erie Railroad Company which had been previously pleaded in the suit. Although prevailing on its motion for summary judgment, Erie appealed from the above portions of the judgment.

■ These statements in the judgment, with regard to a defense of set-off by New Jersey, were obviously called forth by the court's consideration of Erie's counterclaim,

and appear to be an expression of the court's reasoning rather than an embodiment of a determination binding on another court; and, as to the statement that appellant's claim has never been adjudicated, it is conceded that, strictly speaking, that is true. Such statements in the judgment, in any event, are not to be understood as an adjudication of those questions, but, rather, as an expression by the court that they are reserved for another case where the ultimate decision on such issues shall lie with the court to which they may be finally submitted. They are not determinations binding on another court in which Erie may bring an action against New Jersey, or in reorganization proceedings in which Erie may seek to establish its claim.

In accordance with the foregoing, the judgment of the district court granting appellee's motion for summary judgment dismissing the complaint is affirmed.