Marvin LEBMAN and Gerald
Lebman, PLaintiffs,

v.

**NATIONAL UNION ELECTRIC
CORPORATION, Defendant.**

Court of Chancery of Delaware,
New Castle.

Submitted Feb. 7, 1980.

Decided April 17, 1980.

Marvin Lebman and Gerald Lebman, pro
se.

Wendell Fenton of Richards, Layton &
Finger, Wilmington, and George C. Kern,
Jr. and Robert D. Owen of Sullivan &
Cromwell, New York City, for defendant.

MARVEL, Chancellor:

Plaintiffs, having duly qualified for such form of relief, instituted this action under the provisions of Title 8 Del.C. § 253 and § 262 for an appraisal of the intrinsic value of their shares of stock of National Union Electric Corporation as well as those shares of other stockholders of such corporation who had declined to accept the merger price of $28 a share. Such shares had been eliminated as a result of the merger of its 92% owned subsidiary, National Union Electric, Inc., into the surviving National Union Electric Corporation.

Thereafter, being dissatisfied with the amount fixed by the appraiser as the fair value of their shares of stock, plaintiffs, instead of proceeding directly to a hearing on exceptions to the appraiser's final report, proceeded to engage in a long drawn-out effort to have the recommendations of the appraiser not only not approved by the Court but to be virtually ignored and ultimately declared to be null and void.

The Court-appointed appraiser having conducted an appraisal hearing, as required by statute, at which he afforded " * * * a reasonable opportunity to the parties interested to submit to him pertinent evidence on the value of the shares." (8 Del.C. § 262), thereafter determined that the intrinsic value of such shares of stock, as of the merger date of August 1, 1975, the appropriate date for the evaluation of such shares, was $24.85 a share, a value based on what he deemed to be a proper multiplier and by the exercise of his best judgment as to the correct assignment of weight to the customary several areas of value to be considered, namely, asset value, market value, as well as the earnings value of such shares.

As noted above, instead of then proceeding to seek to have the appraiser's determination reviewed by this Court on exceptions to such report " * * * both upon the law and the facts * * *", as contemplated by the provisions of the then statute, plaintiffs first filed a class action in Texas for the alleged benefit of all former minority stockholders of National Union Electric Corporation, including themselves, which action attacked the basic validity of the merger proceeding here in issue, charging multiple acts of fraud on the part of the defendant in the development and carrying out of the terms of such merger. Similar charges were then leveled against the defendant in this proceeding, and, in addition, alternative relief was here sought by way of a motion to have this case in some manner transferred and consolidated with plaintiffs' federal action now pending in Texas.

Plaintiffs then filed a motion in this Court in which they sought the dismissal of this appraisal action, or, in the alternative, that it be stayed pending prosecution of the aforesaid Texas suit. Thereupon, on denial of such motion, plaintiffs, persisting in their efforts to have the present merger proceeding (which they had, as noted above, elected to institute) dismissed,[1] sought to take an interlocutory appeal from the order of this Court to the Supreme Court of Delaware, which appeal was refused. See opinion of this Court of June 19, 1979 and order of the Supreme Court of Delaware of August 28, 1979.

■ This case is now technically before this Court on exceptions to the appraiser's report, a hearing on such exceptions having been held on December 21, 1979. Plaintiffs, at such hearing, while attacking the constitutionality of the short form merger procedure here employed, took the initial position that the appraiser should have found the intrinsic value of their stock to have been $285.52 per share, a value arrived at in large part by the inclusion in such proposed valuation, a sum which the Court-appointed appraiser, in reaching a determination as to the intrinsic value of the shares here in issue, had declined to include in his final report, namely the sum of approximately $250 per share, constituting a possible recovery per share which plaintiffs estimate may result from the successful prosecution

1. Such motion was denied by order of this Court entered June 4, 1979. However, plaintiffs' motion to dismiss all claims other than those made pursuant to 8 Del.C. § 262 was granted in the same order.

of a suit brought on behalf of National Union Electric Corporation against the Japanese manufacturers of the same type of products formerly manufactured by such corporation, namely electrically operated home entertainment devices, such action being based on an anti-trust theory, the gravamen of such action being the contention that as a result of the formation in the late 1960's of a combination of seven major Japanese manufacturers of transistors, radios and television sets, a conspiracy had been entered into the purpose of which was to fix domestic and other non-American prices for such electrically operated products, thus eliminating competition in the sale of such products in Japan and other non-American markets. Such firms thereafter allegedly implemented a previously agreed upon plan to sell these same products at cut rate prices to consumers in the United States, such latter course of business constituting the alleged illegal act of "dumping" in claimed violation of 19 U.S.C. §§ 160–171. As a result of such business activities on the part of the Japanese a precipitous decline in the sale of what had been National Union Electric Corporation's main line of production, namely radios and television sets, occurred, and in order to survive such corporation made a change in business to the manufacture of the type of the products made by Admiral Corporation. Plaintiffs contend that because counsel in the case has expressed the view that National Union Electric Corporation may expect to recover the amount above stated in the suit against the Japanese manufacturers that such additional value must be attributed to the shares in issue. However, the appraiser was of the opinion that the views of trial counsel as to the possible outcome of the law suit in question cannot affect the value of the shares here in issue and declined to set any specific value for appraisal purposes on the suit pending against the Japanese manufacturers, the views of counsel being

mere speculation as to the possible outcome of such litigation, although, of course, the mere pendency of such action may have had some effect on the market price of such shares. I agree with such conclusion, *In re Universal Lubricating Systems*, C.A. 3, 150 F.2d 832 (1945). Accordingly, no special value will be given to the shares here in issue solely by reason of the prior pendency of a law suit in the form of a long-pending but so far unproductive anti-trust claim[2] made by National Union Electric Corporation against certain Japanese manufacturers of radios, televisions and the like although, as noted above, it is recognized that the mere pendency of such action may have had some effect on the market value of the shares of stock here in issue.

After casting about without success for a possible purchaser of its shares in the early 1970's and after first sustaining substantial losses as a result of its discontinuance of the manufacturer of radios and televisions but thereafter making some recovery in earnings as a result of a change in its line of products, National Union Electric Corporation, on June 24, 1974, received an offer from A B Electrolux of Sweden for the purchase of all of its stock at a price of $28 per share. Such offer led to the tendering to Electrolux by the holders of 92% of the outstanding shares of National Union Electric Corporation, including the 42% stock interest[3] then held by the Feldman family and the 10% interest of the second largest stockholder of the company. However, 8% of the stock of National Union Electric Corporation, made up of 166,000 shares, continued to remain in public hands, said shares being held by 3,595 stockholders, including plaintiffs. However, as a result of the August 1, 1975 merger here in issue all but six stockholders of National Union Electric Corporation holding 230 shares (including 127 shares held by plaintiffs) accepted the merger price of $28 per share for their

---

2. See *In re Japanese Electrical Products Antitrust Litigation*, U. S. District Court for the Eastern District of Pennsylvania, MDL no. 189. Opinion dated April 14, 1980.

3. In 1946 Philco Corporation, which then held 46% of the stock of National Union Radio Corporation, the predecessor corporation to National Union Electric Corporation, sold said shares to C. Russell Feldman.

shares. This is the opinion of the Court on exceptions taken both upon the law and the facts to the final report of the Court-appointed appraiser as to the intrinsic value of such non-assenting shares.

On November 19, 1979, notwithstanding the Court's order of June 4, 1979, which on plaintiffs' application dismissed all claims advanced by plaintiffs in this litigation other than claims made under the provisions of 8 Del.C. § 262, plaintiffs filed in this Court a motion for declaratory judgment and for other relief in which they sought a ruling from this Court to the effect that the merger in issue should be rescinded on the ground that its consummation constituted a breach of fiduciary duty owed by majority stockholders to the minority. Such motion, in further disregard of this Court's order of June 4, 1979, also contended that resort to the short-form merger, the provisions of which had been utilized in consummating such transaction, had resulted in the taking of property of the plaintiffs and other minority stockholders of National Union Electric Corporation without due process of law, and furthermore not only subjected the property rights of nonresidents of Delaware to Delaware law without regard to the contact requirements enunciated in the case of *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) in a substantially different context, but also violated the provisions of the interstate commerce clause of the federal constitution.

Thereafter, on December 7, 1979, again without regard to the June 4, 1979 order of dismissal of non-merger claims made in this action, plaintiffs filed a petition on the report of the appraiser in which the steps taken by National Union Electric Corporation and its agents to consummate an allegedly long drawn out and meticulously itemized fraudulent scheme were delineated, the alleged ultimate purpose of which was to deprive plaintiffs and others of their class of the right to receive fair value for their shares of stock in National Union Electric Corporation, namely the sum of $285.52 per share, the amount which plaintiffs ask the Court to award to them and other dissenting stockholders of National Union Electric Corporation as a result of this appraisal proceeding. Earlier in such petition plaintiffs had asked that the entire merger transaction here in issue be rescinded and that the shares of all shareholders involved in the merger in issue be reissued to the holders thereof as of immediately before the merger in question because of alleged fraud in the planning and consummation of the merger in issue and because of such merger's alleged disregard of plaintiffs' claimed constitutional rights. Plaintiffs also ask that the Court appointed appraiser be replaced by a professional appraiser.

■ I conclude that having consented to the dismissal of all claims made in this action other than those contained within the provisions of 8 Del.C. § 262 and by agreeing to the entry of the order herein of June 4, 1979, plaintiffs are barred from thereafter seeking rescission of the merger here in issue and from launching a general attack on such transaction on the ground of fraud and the like.

Insofar as plaintiffs attack the constitutionality of the action taken in this case on the basis of the alleged inadequacies of the Delaware statutes having to do with mergers[4] there is no doubt in my mind that the plaintiff stockholders in this case have, in any event, failed in their blunderbuss attack on the final report of the appraiser. Having studied the appraiser's final report, I not only find that the appraiser acted with complete fairness in a situation in which plaintiffs failed to offer any expert testimony on the claimed value of their shares but that the evidence as to the value of such shares adduced by the resulting

4. But see *MacFarlane v. North American Cement Corporation*, Del.Ch., 157 A. 396 (1928) which notes that mergers to the extent authorized by statute, are " * * * encouraged and favored". See also *Salt Dome Corp. v. Schenck*, Supr.Ct., 41 A.2d 583 (1945) in which the Court noted: "Merger statutes are enacted, not in aid of dissenting stockholders alone, but are as well in aid of majority stockholders and also in aid of the public welfare if the notion that healthy business conditions are in some degree conducive to the general good."

corporation was clear and convincing. Compare *In re Olivetti Underwood Corporation*, Del.Ch., 246 A.2d 800 (1968). Furthermore, the appraiser, citing *Singer v. Magnavox Company*, Del.Supr., 380 A.2d 969 (1977) and *Tanzer v. General Industries, Inc.*, Del.Supr., 379 A.2d 1121 " * * * where supported by the record * * *" indulged " * * * in every reasonable presumption, arising during the appraisal process, in plaintiffs' favor". The appraiser added "* * * I have done so and have specifically identified each of the issues where this has occurred." Furthermore, the appraiser adhered to the appraisal principles set forth in *Tri-Continental Corporation v. Battye*, Del.Supr., 74 A.2d 71 (1950).

> "Thus, market value, asset value, dividends, earning prospects, the nature of the enterprise and any other facts which were known or which could be ascertained as to the date of the merger and which throw any light on future prospects of the merged corporation are not only pertinent to an inquiry as to the value of the dissenting stockholders' interest, but must be considered by the agency fixing the value."

See also *Universal City Studios, Inc. v. Francis I. duPont & Co.*, Del.Supr., 334 A.2d 216 (1975). Significantly, in what would appear to have been an effort to eliminate to the extent deemed reasonable, a basis for quibbling over the value of stock on the several levels of an appraisal proceeding, the Legislature amended 8 Del.C. § 262, effective July 1, 1976 so as to take away the appraisal rights of a dissenting stockholder in situations in which the securities in issue were (1) listed on a national securities exchange or (2) held of record by more than 2,000 stockholders.

■ I am satisfied also that in the course of the proceedings before the appraiser there was a satisfactory showing made of a bona fide business purpose behind the effectuation of such merger's proposal and consummation in light of the basically bleak financial prospects facing National Union Electric Corporation in the early 1970's (despite some improvement in earnings brought about by a shift to other product lines) engendered by the intense Japanese competition with which it had had to cope unsuccessfully in the home entertainment field.

■ Finally, having considered the analysis made by the appraiser as to the intrinsic value of shares of National Union Electric Corporation as of the date of merger derived from the facts adduced at the hearing conducted by him, at which the present expectants failed to offer any acceptable evidence of the value of their shares, I am satisfied that the appraiser's final report should be received as submitted, there being no persuasive evidence of value for the shares in issue other than that adduced by the resulting corporation. I accordingly conclude that the formal exceptions taken to the appraiser's monetary findings must be disallowed. I am also in accord with the multiplier of nine used by the appraiser in reaching his recommendations.

The following is accordingly found to be the intrinsic value of a share of stock of National Union Electric Corporation as of August 1, 1975, namely $24.85.

| Value Element | Value Per Share | Weight | Value |
|---|---|---|---|
| Assets | $28.42 | 25% | $ 7.11 |
| Market | 20.25 | 40% | 8.10 |
| Earnings | 27.54 | 35% | 9.64 |
| | | 100% | $24.85 |

■ Finally, there remains the matter of fixing the appropriate amount of interest to be allowed plaintiffs and those other former stockholders of National Union Electric Corporation who were found to be entitled to an appraisal of the intrinsic value of their shares of stock as a result of the merger here in issue since the date of merger, namely August 1, 1975, and continuing during the period of this appraisal action. Plaintiffs seek an award of interest at a rate of 13.25%. The stockholders Nicola Biase and Joyce Biase merely ask for an award of interest.

First of all, it is clear that 8 Del.C. § 262(h) gives this Court the discretionary power over the question of whether or not

to award interest in connection with an award made in an appraisal action, a question which I think in the case at bar should be resolved in favor of the dissident stockholders. Next, the Supreme Court of Delaware has established the ground rules for making a discretionary award of interest, the purpose for the award of such interest when allowed being " * * * to fairly compensate plaintiffs for their inability to use the money during the period in question.", *Universal City Studios v. Francis I. duPont & Co.*, supra, the same case being authority for the proposition that it is proper for this Court in a situation such as the one here presented " * * * to focus on what would have been the rate of interest at which a prudent investor could have invested money rather than * * * on how much it would have cost the corporation to borrow the money."

In applying such test, this Court has established the rate of return available to an ordinary prudent investor by averaging the return from a mixed portfolio of short, medium, and long term United States Treasury bills, savings deposits held in commercial banks, savings deposits held in mutual savings banks, Moody's triple A corporate bond average, and finally the values found in the Dow Jones industrial common stock average, *Gibbons v. Schenley Industries, Inc.*, Del.Ch., 339 A.2d 460 and *Universal City Studios, Inc. v. Francis I. duPont & Co.*, supra.

The affidavit submitted to the Court by the resulting corporation sets forth the average yields which an investor could have realized in an investment portfolio such as the one stated above between August 1, 1975, the date of the merger here in issue, and November 30, 1979, the average return on such a portfolio being calculated to be 6.59% during such period.

Plaintiffs, on the other hand, contend that they as seasoned and successful investors have realized up to 16% on their investments since the early 1960's, and have been able recently to earn a return of 13.25% on notes such as those issued by General Motors Corporation as of November 19, 1979, and there is no doubt that in recent months extraordinarily high rates of interest have been paid to lenders. However, I am satisfied on the basis of the above cited opinion of the Supreme Court of Delaware that plaintiffs here are entitled to interest solely in the form and amount above outlined as the return they might have expected to receive on a prudent investor basis had they received the fair value of their shares of capital stock of National Union Electric Corporation on August 1, 1975 and thereupon invested such moneys prudently. Accordingly, plaintiffs and other stockholders who have qualified for an appraisal of their shares will be allowed interest in the amount of 6.59% on the appraised value of their stock between the merger date of August 1, 1975 and the date of payment to them of the amount due them.

On notice, an order in conformity with the above may be submitted.